### JACKSON and wife *vs.* EDWARDS and others.

Where a conveyance of a real estate was made to a feme covert, to hold during the joint lives of herself and husband for her separate use, and to such uses, intents, purposes and appointments as she should by any deeds or writings executed in the presence of one witness, limit and appoint from time to time, notwithstanding her coverture, and in default of such limitation or appointment then to herself in fee, in case she should survive her husband ; and in case she should not survive her husband, and in default of such limitation or appointment by deed or writing during her life, then to such uses and purposes as she should by will limit and appoint, and in default of such appointment by will, to the use of her children or issue living at the time of her death, to be divided among them in the same manner as they would have taken the same if she had survived her husband and had died intestate ; and in default of such issue, to her own right heirs ; *Held*, that this conveyance, in case the power of appointment was not executed, gave to the feme covert an absolute estate for life only,

and a vested remainder in fee after her husband's death, subject to be divested in favor of her children or issue by her death in the lifetime of her husband; *Held also*, that under the provisions of the article of the revised statutes relative to powers, the power given to the feme covert, to dispose by appointment of the contingent remainder limited to her children or issue, so as to prevent them from taking the estate in the event of her death during the life of her husband, was valid; and that her deed of appointment, under the power, would convey the entire estate in fee to her appointee.

A power may be given to a feme covert to convey a future as well as a present fee in lands, for her own benefit and support during coverture. But a deed of appointment by a feme covert, under a power, must be acknowledged in like manner as other conveyances executed by femes covert.

In proceedings in partition, either at law or in equity, the inchoate rights of dower of femes covert, whether infants or adults, in the undivided shares of their husbands in the land, the wives being parties to the proceedings, will be divested by a sale under the judgment or decree of the court, so as to protect the purchasers against the dower of such femes covert should they survive their husbands.

Where, after a suit in partition was commenced, and after notice of the lis pendens was duly filed, one of the tenants in common married a wife; whether such wife acquired any interest in the premises which were the subject of the litigation, and which would not be divested by a sale under the decree; *quære?*

Whether a complainant in a partition suit is bound to take notice of the marriage of a male defendant, *pendente lite; quære?*

If it is proper to do so, neither a supplemental bill nor an amendment of the original bill is necessary to bring the wife before the court, but the proper course is, as in the case of the marriage of a female defendant, to obtain an order that the further proceedings in the suit be in the name of the husband and his wife as parties.

All future estates in the premises, both vested and contingent, may be sold under a judgment or decree in partition, although not embraced within the specific directions of the revised statutes; and in all such cases the court must ascertain and settle the value of such future estates, and must make the necessary order for the protection of the shares of the persons who then are or thereafter may be the owners of such future estates.

The court will not give a purchaser at a master's sale the benefit of his purchase, where he neglects to comply with the terms of sale within a reasonable time, if a resale is deemed more beneficial to the parties.

So the court will not compel him to take the title where, by the fault of the parties, the completion of the sale has been delayed so long that he cannot have the benefit of his purchase substantially as if the sale had been completed at the time contemplated by the terms of sale.

THIS case came before the court upon five different appeals, by the complainants, from five distinct orders of the vice chancellor of the first circuit, refusing to compel the

January 28.

respondents respectively, who were purchasers at the master's sale of different portions of the premises directed to be sold under the decree in partition in 'this suit, to complete their purchases. The premises were situated in the city of New-York, and were sold in February, 1837, as and for good titles. The respondents respectively objected to the title which the purchasers would acquire under the master's deed ; and upon applications to the court ·to compel them to complete their purchases, in April, 1837, it was referred to the master to examine the objections of the purchasers to the title, as the same might be conveyed to them under the proceedings in this cause, or otherwise, and to report thereon. The first and second objections to the title as made before the master, related to the insufficiency of the title of the parties to this suit on the ground of the invalidity of the will of Henry Jackson, deceased, and a subsequent deed of compromise among his heirs at law and devisees ; under which will and deed the parties to this suit had acquired their title to the premises. The third and fifth exceptions were founded upon certain contingent limitations under the will of the decedent, and under a deed of settlement made subsequent to the decedent's death, between the defendants Edwards and wife and another of the defendants, as her trustee, in favor of her children who were not parties to the suit. And the fourth objection was founded upon the supposition that the wives of two of the tenants in common,. one of which wives was an infant, would not be barred of their contingent rights of dower in the shares of their husbands in the premises, by a sale under. the decree in this cause to which such wives were parties. Pending the reference, and about ten months after the sale, the counsel of the complainants obtained from Mrs. Edwards, under an order of the court requiring her to execute the same, deeds of appointment in favor of the purchasers which obviated the objection as to the contingent interests ; in favor of her children under the will of her father and under the deed of settlement. And in January, 1838, the master reported that the purchasers would obtain a good title to the lots purchased by them respectively, under the master's deeds in con-

nection with these additional deeds of appointment executed by Mrs. Edwards. The purchasers objected to the master's taking into consideration the deeds of Mrs. Edwards in deciding upon the validity of the title, and offered to prove before him that the premises had greatly depreciated in value subsequent to the sale and before these deeds from Mrs. Edwards were obtained. But the master overruled the objection and offer, on the ground that the matters thereof were not embraced in the order of reference. The purchasers excepted to the report, not only on the ground of the last objection, but also on the ground that they would not obtain a good title under the master's sale even in connection with the deeds of appointment of Mrs. Edwards. And the complainants excepted to the report on the ground that the master had not reported that the title would be perfect under the master's deeds alone. The exceptions were argued before the vice chancellor, in connection with the motion to compel the purchasers to complete their purchases. In opposition to which motion an affidavit of one of the purchasers was read, stating that the lots could have been sold within about three months after the sale at an advance, if a good title could then have been given to the purchasers; but that subsequent to the order of reference, and before the order requiring Mrs. Edwards to make the additional conveyances was obtained, the property had depreciated in value about twenty-five per cent, whereby the purchasers would be great losers if they were then compelled to take the title. The vice chancellor decided that the title to the premises would be perfect under the master's deeds and the additional deeds of Mrs. Edwards, except as to the inchoate rights of dower of Maria Jackson, one of the complainants, and of the infant wife of David S. Jackson, one of the defendants; but that their rights to dower in the premises, in case they survived their husbands, could not be barred by a sale under a decree in partition to which they were parties. He therefore refused to compel the purchasers to complete their purchases.

1839.

Jackson
v.
Edwards.

The following opinion was delivered by the vice chancellor upon making the decretal order which was appealed from :

McCoun, V. C. I am inclined to think upon consideration of the several objections raised by the purchasers, and which are set out in the master's reports of the 8th January, 1838, that none of them are well founded, except the fourth, which relates to the rights of dower of the wives of H. Jackson and D. S. Jackson. It appears to me that in every other respect the decree has settled the right of the parties *to the suit* ; and that the purchasers will get an absolute title, whether the tenants in common are considered as taking under the will of their ancester, or by descent, (supposing *the will* to be invalid ;) or by virtue of the deed of compromise entered into and executed between them. In either event the decree binds their rights, and passes the title, by means of the master's deeds of conveyance, to the purchasers of the lots.

Mrs. Merriam having released, although she is not a party to the suit, she can never claim in opposition to her release. The liens or charges created upon the estate are provided for in the decree and will be satisfied out of the proceeds of the sale, and the lands in the hands of the purchasers are of course exonerated. Mrs. Edwards' deeds of appointment in favor of the several purchasers, executed in pursuance of the order of 27th of November, 1837, will effectually cut off all the contingent claims which might possibly arise in the absence of any such appointments ; and nothing remains to embarrass the title of the purchasers except the question in relation to the inchoate rights of dower of the wives of two of the tenants in common above named. There is no direction in the decree for a release of these rights ; it is silent with respect to them ; and no such releases by the voluntary act of the parties have been tendered. One of the femes being still an infant, is incapable of executing an effectual release. And as to the effect of the decree itself upon her right, though she is made a party in conjunction with her husband, and has appeared separ-

ately by a solicitor, or by her guardian ad litem, I am not yet satisfied to retract the opinion expressed in *Matthews* v. *Matthews*, (1 *Edw. Ch. R.* 565.) I am aware that contrary opinions, entitled to great respect, have been expressed elsewhere, but not judicially.(*a*)

1839.

Jackson
v.
Edwards.

It is undoubtedly competent for the legislature to provide by law for divesting a wife in these cases of her right of dower in lands held in common by the husband. The legislature may, indeed, abolish the common law right of dower altogether; but I cannot find any where in the revised statutes that they have done so. On the contrary, the right is by statute not only declared, but most carefully guarded and regulated. (1 *R. S.* 740.)

Where an actual partition is made, it has not the effect of divesting the right, for the right remains unimpaired; though it attaches itself to the land set apart to the husband in severalty. But where a sale, instead of an actual partition, is found to be necessary, it is supposed by the complainant's counsel that the right or interest of the wife, as well as the title of the husband, passes, and that the purchaser will hold the land free of dower. The statute in relation to partition proceedings, has not so declared in terms; and if such had been the intention of the legislature, it appears to me there would have been some provision in the law for securing the fund or proceeds belonging to the husband, or some portion of it at least, for the benefit of the wife, in the event of her survivorship; but no such provision is made. Where there is an estate in dower, or by the curtesy, the statute is explicit in its directions, and the powers of the court are declared. (2 *R. S.* 325, § 50 *to* 55.) How can these provisions be applied to the case of a mere contingent or inchoate right? The practical effect, as it seems to me, would be rather ludicrous; since it would be converting a wife into a widow during the husband's life. Then has the court power independently of any statutory authority to deal with

(*a*) A written opinion of the late Chief Justice Savage was produced before the vice chancellor, which was in accordance with the subsequent decision of the Chancellor on this question.

the proceeds of the husband's share, and to compel him to make a settlement upon his wife, in the event of her surviving him, in lieu of her dower in the lands sold ? Cases do frequently occur where the court of chancery has jurisdiction to control a husband in the exercise of his legal rights in respect to the wife's property until he shall make a settlement upon her ; but in a case like the present, the control must be had over the wife, to compel her to accept a provision in money instead of the use of the land, which the law leaves to her own free choice. Here lies the difficulty ; as the law stands, the court cannot compel her to accept a settlement in lieu of dower, though it should undertake to coerce the husband into a settlement upon her. The statute in relation to dower, expressly gives the wife an election in many cases, and the sixteenth section (1 *R. S.* 742) is most explicit, that no act, or deed, or conveyance, executed or performed by the husband without the assent of his wife evidenced by her acknowledgment thereof in the manner required by law to pass the estates of married women, and no judgment or decree confessed by or recovered against him, shall prejudice the right of his wife to her dower, or preclude her from the recovery thereof. How then can the courts say that the act of the husband in subjecting his wife to a partition suit, or that a judgment or decree rendered therein without her assent evidenced in the manner pointed out, is to have the effect of barring her right ; or that she shall accept a pecuniary or any other provision in lieu of her dower ? Her assent appears to be absolutely necessary ; and if she is competent in law and is willing to give such an assent, let her give it by uniting with her husband in a release duly executed and acknowledged. It is after all a conventional matter between them, whether she has been made a party to the suit or not.

This is all I deem it necessary to say in addition to what is said in *Matthews* v. *Matthews.* Unless releases of the wives can be obtained, I am still of opinion the purchasers are not bound to take the title.

*W. Silliman,* for the appellants. The estate of Mrs. Edwards was a beneficial power over the entire fee, and an absolute fee to her in case she survived her husband without making any disposition of the property, and in case of her death in the lifetime of her husband without any disposition her estate would go to her issue or heirs at law according to the statute of descents. A beneficial power over the entire fee is regarded as a fee. And the fee would necessarily pass to the purchasers by a sale under the decree. (16 *John. R.* 537.) If Mrs. Edwards had not an estate in fee, but only an estate for life with an absolute power of disposition not accompanied by any trust, then such estate was, by section eighty-one, (1 *R. S.* 732,) changed into a fee in respect to creditors and purchasers. So a beneficial power only over the fee would be a fee absolute, in respect to creditors and purchasers. (1 *R. S.* 732, § 82.) The rights of the children of Mrs. Edwards, if they had any, were extinguished by the sale. The inchoate right of dower of the wife of the defendant, D. S. Jackson, was extinguished by the sale under the decree. (2 *R. S.* 322, § 35. *Id.* 327, § 61. *Id.* 329, § 79, 80. *Id.* 330, § 81, 84.) Every species of interest which any party to a suit in partition has, or can have, will pass to the purchaser under the judgment or decree. And the title of the purchaser cannot be impeached because the decree is erroneous or even irregular. (2 *Sch. & Lef.* 565. 9 *Ves.* 37. *Sug. on Vendors,* 46. 12 *Ves.* 89. 1 *Ball. & Beat.* 489. 2 *Id.* 207. 2 *Dowe,* 526. 4 *Wendell,* 483. 12 *Id.* 533.) A feme covert is as much bound by a decree as a feme sole ; (1 *Ball & Beat.* 502 ; 1 *Ves. sen.* 163 ;) but especially, as the rights of the wife of D. S. Jackson accrued after the bill was filed they must be subject to the decree against the previous parties. (2 *Vesey & Beame,* 204. 2 *Ball & Beat.* 187.) A person dealing with property, pending a suit, deals subject to the decree that may be made in such suit. (1 *John. Ch. R.* 566. 2 *Id.* 441.) It is sufficient, if a party can make a good title at any time before the final decree.

*C. O'Conner*, for Bloodgood & Jones, purchasers. The inchoate rights of dower of the complainant's wife, and of the wife of the defendant D. S. Jackson, were not barred by the decree for sale and the master's deed under it.

No authority has been cited for the general proposition, that the court of chancery possesses jurisdiction to transfer the title to land, except in those special cases where by statute the power has been expressly given. Title to the realty belongs peculiarly to the common law jurisdiction. A decree in chancery under the general jurisdiction of the court has never yet been held to transfer the title to land. In specific performance, trusts and other heads of its proper jurisdiction, the invariable practice of chancery is to decree the execution of deeds by the parties in whom the title is vested. (1 *Story's Eq.* 607, § 652. *Whaley* v. *Dawson*, 2 *Sch. & Lef.* 371. *Alnatt on Partition*, 124.)

The decree does not in terms extinguish these inchoate rights of dower, nor does it direct the performance by these femes covert of any act to produce that effect. The counsel says, if the decree is erroneous in not duly protecting the rights of parties, let the injured parties appeal; but here it will be seen that these wives are not injured, and could not appeal. The general position, that purchasers are not affected by error and irregularity apparent on the face of the decree, and operating to the prejudice of a party named in the record, but who stands there *in vinculis*, as a married woman, or an infant, or idiot, represented by an interested prochein ami, is not true. The decree is fraudulent as it respects these married women, and the purchaser could not plead ignorance of the fraud. Where the prosecution or defence of a suit in equity is by husband and wife, and there is no guardian or prochein ami appointed for the latter, it is regarded as the prosecution or defence of the husband only, and the wife, though nominally a party, is not deemed a party to any substantial purpose. (*Griffith* v. *Hood*, 2 *Ves. sen.* 452. *Breedon* v. *Vaughan*, *Dickins*, 566. *Pawlet* v. *Delaval*, 2 *Ves. sen.* 666, 671. *Hodgson* v. *Merest*, 9 *Price*, 556.) At common law, dower could only be extinguished by a common recovery. It is

said that Mrs. D. S. Jackson is a purchaser of her inchoate right of dower *prudente lite*, and therefore that her rights may be disregarded. After the marriage of Mrs. D. S. Jackson, the complainants amended their bill, and made her a party. An amendment of the bill is a new commencement of the suit, and entitles all parties to make a completely new defence. (*Bowen* v. *Idley*, 3 *Paige*, 43.) No notice of lis pendens had been filed ; and the bill did not therefore operate against Mrs. D. S. Jackson, who is to be regarded as a purchaser. (12 *John. R.* 536. 1 *Cowen*, 89. 5 *Id.* 703. 11 *Wendell*, 452.) By the revised statutes relative to the partition of lands, a sale under a decree in chancery, perfected by a master's deed, does not cut off the inchoate right of dower of the wife, where the latter is named as a party in the suit. (*2 Cranch*, 52. 2 *Id.* 390.) The contingent interests of the children of N. S. Edwards were not cut off until she executed her deed of appointment of December 22, 1837. It is said that this was an absolute fee in respect to creditors and purchasers. We presume if the rights of creditors required that the fee should be sold, it might be sold to satisfy them ; but if the particular estate was sufficient for their satisfaction, the future estates limited thereon, in case the powers should not be exercised, would not be annulled. (1 *R. S.* 732, § 81.) In the absence of any express declaration in the decree cutting off those future estates, on the ground of its being necessary to sell the fee to pay debts, it is conceived that the consent of Mrs. Edwards in her answer must be deemed a consent to sell the particular estate, and that the decree must be construed accordingly. The title having been defective at the time of the sale, and one of the vendors of the property having herself held back and refused to perfect it for ten months, and circumstances having in the meantime greatly changed, the purchasers ought to be discharged. (*Lloyd* v. *Collett*, 4 *Bro. C. C.* 469. 4 *Vesey*, 686, 689, *note, S. C. Benedict* v. *Lynch*, 1 *John. Ch. R.* 370, 375, 379.)

*R. Bogardus*, for Clotilda Smith, a purchaser.

*W. Inglis*, for Perigo & I. W. Smith, purchasers.

*M. Hoffman,* for the other parties in the suit. The wife of the defendant D. S. Jackson came in pendente lite. It was necessary to make her a party; and she was not made a party by an amendment so as to identify her right with the period of filing the original bill. The act of making her a party never can prejudice the rights of the other parties to the suit to enforce a specific performance, and never could be put forth by her to justify a claim of dower. A notice of *lis pendens* was filed in the clerk's office. The doctrine of lis pendens is this, that every one who acquires an interest in the property in question takes it subject to that decree which would have been made if the right had never been acquired. This is not merely to avoid perpetual litigation from change of parties, but is a right vested in all the parties in the suit that what is perfect and will ensure the success of the suit, shall not, by the act of either, be rendered defective or imperfect. If the intervening acquirer brings, by a supplemental bill, his claim before the court, it will be protected, (6 *Mad. R.* 59;) but in strictness the decree may be as it would properly have been if no such right had been obtained. The case of *Sears* v. *Heyer,* (1 *Paige,* 486,) where a mortgage was given pendente lite upon an undivided share is decisive. We say that the purchaser can avail himself of this rule as much as others. The right thus acquired was not a right which the court was bound to notice. The wife of D. S. Jackson, whether regarded as an infant or a feme covert, was put before the court in a position to have her rights passed upon and bound by the decree. (1 *Ves. sen.* 160. *Id.* 89, 91. *Id.* 157. *Bett's Supp.* 86.) Nothing can be more clear than that an infant wife, if the property in question were her own might be brought in upon a bill to affect her estate, by partition or otherwise, under the general power of the court, without the aid of any statute. The cases of *Jones* v. *Jones,* (*Bland's R.* 455,) and *Wells* v. *Ronaldson,* (*Id.* 456,) may be referred to in illustration of this rule of the court. Married women and infants have been bound by decrees, before the revised statutes, in a thousand cases.

There is no distinction where the two disqualifications are combined in the same person.

Now we insist, that as regards purchasers, the only question is, whether all proper parties are before the court; not how the court has adjudged their rights, or has distributed the proceeds of a sale. If all the parties in whom an interest exists which could at all disturb his title are parties to the suit, and a sale is decreed, with due observance of statutory provisions, where such exist, the purchaser need look no further. His protection is perfect; his indemnity entire. *Gifford* v. *Hist*, (1 *Sch. & Lef.* 386,) refers to a defect of parties in whom an interest existed. *Bennet* v. *Hamilton*, (2 *Id.* 566,) shows the rule of the court. (*See especially p.* 576. *See also Loyd* v. *Johnes*, 9 *Vesey*, 65.) Again; the case of *Curtis* v. *Price*, (12 *Vesey*, 89,) is an express authority that an irregularity in the decree as to the application of the purchase money, in not securing it for the person entitled, cannot affect a purchaser. The revised statutes not only have not prohibited the exercise of the right of the court to bind a woman's inchoate right of dower, but have sanctioned it. We say that it is the settled rule, that a title may be perfected even at the hearing. And it is another rule that the purchaser should apply for his discharge promptly. (*See Mason at Chambers*, 3 *Monroe*, 321.)

THE CHANCELLOR. The objection to the title on the ground of the supposed invalidity of the will of Henry Jackson is not well taken. In the original report upon the title the master reported in favor of the due execution of the will. This was sufficient prima facie, as the will had been proved before the surrogate as a will of real and personal estate. But if the will was not duly executed then the premises in question descended to the heirs at law of the decedent; all of whom were parties to this suit except Mrs. Meriam who released her interest in the premises to others who were defendants. And the decree in this case, declaring the rights of the several parties in the premises in conformity with the deed of compromise, is conclusive as to those rights as between the purchasers and the heirs at law who were

1839.

Jackson
v.
Edwards.

made parties to the suit. It is true Mrs. Meriam had a specific lien upon an undivided portion of the premises under the deed of compromise ; and not being made a party to the suit her lien upon the lands would not be divested by the sale, notwithstanding the provision made in the decree for the payment of her imcumbrance, if for any reason the amount due was not actually paid to her. The purchasers therefore would have had the right to insist that her release should be procured, or that the payment of her lien should be made either before or simultaneously with the payment of the money by them, upon the completion of their purchases. That objection to the title does not, however, appear to have been made ; and if it had been, the objection would unquestionably have been obviated at once.

The title to Mrs. Edwards' share of the property under the conveyance and reconveyance of July, 1835, except as to the life estate of the husband in one third and the charge in his favor upon the residue of that share, was substantially the same as her interest in that share of the estate would have been under the will of her father. Whatever interest she had in the estate by the will of her father, either as absolute owner or as the devisee of a beneficial power, except so far as the same had been affected by the deed of compromise, was unquestionably vested in D. S. Jackson by the deed from herself and her husband to him of the 6th of July, 1835. For that deed was not only a valid and effectual conveyance of all the interest which either she or her husband had in the estate, but it was also a good execution of the beneficial power to convey the fee as authorized by the will. By the reconveyance of D. S. Jackson, on the same day, one third of that share was conveyed to the husband of Mrs. Edwards for life, together with a charge of $5000 in his favor upon the residue of that share, with a beneficial power to sell, if necessary, to raise the $5000. So much of that share as was not conveyed to the husband was then conveyed to the wife ; to hold the same during the joint lives of herself and husband for her seperate use, and to such uses, intents, and purposes, and appointments as she should by any deeds or writings executed in the presence of one

witness, limit and appoint, from time to time, notwithstanding her coverture ; and in default of such limitation or appointment, then to herself in fee, in case she should survive her husband. But in case she should not survive her husband, and in default of such limitation or appointment by deed or writing during her life, then to such uses and purposes as she should by will limit and appoint ; and in default of such appointment by will, then to the use of her children or issue living at the time of her death, to be divided among them in the same manner as they would have taken the same if she had survived her husband and had died intestate ; and in default of such issue to her own right heirs.

The legal effect of this conveyance, in case the power of appointment by deed or devise should not be executed, and without reference to the provisions of the 81st section of the article of the revised statutes relative to powers, (1 *R. S.* 732,) was to give to Mrs. Edwards an absolute estate for life only, in that part of the property which was not granted to the husband, and a vested remainder in fee therein after his death ; subject however to be divested and defeated, in favor of her children or issue as the contingent remaindermen, by her death in the lifetime of her husband. And as the article of the revised statutes relative to powers abolished powers as they existed at the common law, and required that thereafter the creation, construction and execution of powers should be governed by the provisions of that article the validity of the power to this feme covert to dispose of the contingent remainder, limited to her children or heirs in case of her death during the life of her husband, so as to prevent them from taking under the deed of settlement in case the estates limited to her directly should be defeated by her death in the lifetime of her husband, must itself depend upon the construction of the various provisions of that article. The eightieth section authorises the creation of a general and beneficial power to a feme covert to dispose of lands, without the concurrence of her husband, where such lands are conveyed or devised to her in fee. And by the 87th section of that article a special and bene-

ficial power may be given to her to dispose, in like manner, of any estate less than a fee, *belonging to her*, in the lands to which the power relates. (1 *R. S.* 732, 733.) Neither of those sections, however, authorize the giving to her of a *beneficial* power to dispose of an estate or interest in lands, as a feme covert, which interest or estate does not belong to her; and which upon the happening of the contingency or event provided for in the grant or devise is limited to some other person. Under some of the other provisions of this article a power *in trust* may be given to a feme covert to dispose of an estate or interest in lands, which does not belong to her, to or for the benefit of other persons as the objects of the trust. And the right to create such powers is unquestionably much more extensive than to create powers for the benefit of the persons to whom the power itself is granted. The power which is given to Mrs. Edwards in this case, by the deed of settlement, is a power in which no person but herself has, by the terms of its creation, any interest in its execution. It is therefore a power purely beneficial according to the legislative definition of such powers. (1 *R. S.* 732, § 79.) And as the 92d section of the article before referred to declares that no such beneficial powers shall be created, other than such as are before enumerated and defined in that article, the power of Mrs. Edwards to appoint the absolute fee to the purchasers under the master's sale cannot be sustained, unless the case is provided for by the 81st section when taken in connection with the 80th and 84th. The 81st section declares that where an absolute power of disposition, not accompanied by any trust, shall be given to the owner of any particular estate for life or years, such particular estate shall be changed into a fee, absolute in respect to the rights of creditors and purchasers; *but subject to any future estates limited thereon* in case the power should not be executed, or the lands should not be sold for the satisfaction of debts. And by the 85th section every power of disposition is to be deemed absolute, by means of which the grantee of the power is enabled in his lifetime to dispose of the entire fee for his own benefit. In this case, by the terms of the deed of settlement, the wife is

the owner of a particular estate for life in that part of the property which was not conveyed to her husband; with power to dispose of that estate, as well as the remainders in fee limited thereon, in her life time, for her own benefit, and also to devise the inheritance to whoever she pleases at her death. This, therefore, in favor of her grantees to whom she shall convey the estate, in the execution of the power, either by deed or will, changes her life estate, and her contingent or determinable fee, into an absolute fee in presenti, in two thirds of the estate, and into a remainder in fee absolute in the other third after the death of her husband; subject to the charge or incumbrance thereon of the $5000.

It may be objected, perhaps, that the 80th, 81st and 85th sections have reference to a power to dispose of an absolute estate in fee in the whole premises in presenti; and that the present estate or interest which was carved out of the entire fee and conveyed to the husband by the deed of settlement, rendered these provisions of the statute inapplicable to the present case, and invalidated the beneficial power to the wife to dispose of that part of the fee which is limited upon the life estate of the husband. I cannot believe, however, that it was the intention of the legislature to prevent the creation of a power which would enable a feme covert to convey a future as well as a present fee in lands, for her own benefit and support, during coverture. And the language of these sections applies as well to a future as to a present estate in fee in the lands which are the subject of the power, provided the power is to be executed in the lifetime of the grantee of the power. I agree with the vice chancellor and the master therefore that the sale of the interests of Edwards and his wife under the decree, and the execution of her deed of appointment in favor of the purchasers, will be sufficient to vest in such purchasers the whole estate or interest in that share of the property which was conveyed to D. S. Jackson, and re-conveyed by him, by the deeds of settlement in July, 1835.

I am of the opinion, however, that the master's deed under the decree, to which decree the children then in existence, who were presumptively entitled to the contingent re-

mainder in fee in the event contemplated by the deed of settlement, were not parties, would not of itself have been sufficient to divest their contingent interest. By a reference to the eighty-first section of the article relative to powers, it will be seen that though the particular estate of the grantee of the power is changed into a fee in favor of purchasers and creditors, an actual execution of the power, or a sale of the lands for the satisfaction of the debts of the grantee of the power, is required to divest the future estates which are limited upon the particular estate of such grantee of the power. And a sale under the decree in partition, was not a sale of the land for the satisfaction of the debts of Mrs. Edwards ; nor was it a valid execution of the power in favor of a purchaser at the master's sale, although she had by her solicitor assented to the decree under which that deed was made. Every instrument, except a will, in the execution of a power, is a conveyance which must be recorded to protect the estate conveyed against subsequent bona fide purchasers or grantees ; and where such grant or conveyance is executed by a feme covert, she must acknowledge it upon a private examination before the judge or commissioner, as in the case of other conveyances executed by femes covert. (1 *R. S.* 736, § 114, 117.) It is impossible, therefore, that the mere assent of Mrs. Edwards to this decree of sale should be considered a valid execution of the power to convey the fee for her own benefit to these purchasers.

It remains for me to consider the objection to the title arising from the fact that the wife of the complainant, Henry Jackson, and the infant wife of D. S. Jackson, one of the defendants, had inchoate rights of dower in the undivided shares of the premises belonging to their husbands respectively ; and which the vice chancellor supposes could not be divested by a sale under the decree, so as to protect the purchasers against the dower of these femes covert should they survive their husbands. The defendant, D. S. Jackson, was not married when the original suit was commenced ; and it appears by the papers before me on these appeals that notice of the commencement of the suit was duly filed,

in August, 1835, as required by the statute, and by the rule of this court. It is very doubtful, therefore, whether the wife of this defendant, who was married three months afterwards, could acquire any interest in the property which was the subject of the litigation, by her own voluntary act pendente lite, which would not have been divested by a sale under the decree. But it appears the complainants amended their bill, subsequent to the marriage of the defendant D. S. Jackson, by stating the marriage and making his wife a formal party as a defendant in the bill. And this, as the counsel for the respondents insist, was a waiver of the former proceedings, and a substantial commencement of the suit de novo subsequent to the marriage. It probably was not necessary for the complainants to take any notice whatever of the marriage of a male defendant pendente lite. But even if it was proper that his wife should be named in the subsequent proceedings, neither a supplemental bill nor an amendment of the original bill was necessary to bring her before the court. The proper course would have been, as in the case of the marriage of a female defendant, to obtain an order that the further proceedings in the suit should be in the names of the husband and his wife as parties. (See *Story's Eq. Pl.* 289, § 354; *Gilbert's Ch. Pr.* 174, 178.) Indeed, as a general rule, a bill cannot be amended for the purpose of stating any new matters which have occurred subsequent to the commencement of the suit; or of bringing a party before the court whose right or interest in the suit accrued subsequent to the time of filing the original bill. (1 *Daniel's Ch. Pr.* 510. 1 *Newl. Pr.* 279.) And I presume the order of the vice chancellor of the 16th of December, 1835, directing that the wife of D. S. Jackson be made a party defendant with her husband, was only intended to conform to the usual practice, in making the husband of a female defendant who has married pendente lite a party with her in all future proceedings in the suit; and that the solicitor for the complainants mistook the intent and meaning of that order, if he supposed it required or even authorized an amendment of the bill by stating the marriage which had taken place since the commencement of the suit, and making

her a party to the bill itself, instead of a mere party to the further proceedings in the suit, by a formal prayer of process of subpœna against her in such bill. Without stopping, however, to inquire whether the counsel for the purchasers are right in their conclusions as to the effect of this irregular amendment of the bill, upon the rights of a party who would otherwise have stood in the situation of a mere purchaser from a defendant pendente lite, I shall proceed to dispose of these remaining objections to the title to be acquired by the master's deed, under the decree of sale, as if the suit had been actually commenced at the time that amendment to the bill was made.

The power of this court to transfer the legal titles of infants and others who are made parties to a suit in partition, by a simple conveyance by the master upon a sale by him under the decree, does not depend upon the general powers of this court to transfer the legal title to real estate by a simple decree for the sale thereof by a master. But it depends upon the true construction of our several statutory provisions relative to the partition of lands. Independent of the statutory provisions in aid of the powers of this court, the ordinary mode in which courts of equity transferred the legal title, upon a sale under a decree, was by operating upon the parties themselves, and compelling them to join in the conveyance to the purchaser, so as to transfer their legal titles in connection with the equitable interests of any of the other parties; which equitable interests would be bound by the decree, by estoppel, and would pass by the master's deed, without any formal conveyance by the parties having an equitable interest only. Thus, where the legal estate was in the hands of trustees, the decree for a sale thereof, to satisfy the objects of the trust or any lien or incumbrance upon the property, usually required the trustees to join with the master in his conveyance on the sale; and that was deemed sufficient to protect the rights of the purchaser, both in law and equity, against the claims of cestuis que trust who were parties to the suit, or who were bound by the decree as privies. But independent of any statutory provisions, this

court was not wanting in power to make a decree which would protect the purchaser at the master's sale, when all persons having a legal or equitable title to the land that was capable of being released or transferred to the purchaser were made parties, and where they were within the jurisdiction of the court, so that its process could be made effectual against them; although the parties having the legal title or interest in the land were infants or femes covert. In the case of a feme covert, the court compelled her to join with her husband, in a transfer of her legal interest to the purchaser, by a fine or other formal act which would have the legal effect to extinguish or transfer such interest. And in the case of an infant, although the court had not the power to decree a conveyance from him which would operate as an immediate transfer of his legal estate, the court was authorized to do that which was substantially the same thing, so far as the interest of the purchaser was concerned: that is, to decree a conveyance by the infant upon his attaining twenty-one, unless within six months after he should attain that age he should show cause to the contrary; and that in the meantime the purchaser hold and enjoy the estate. (*Blatch* v. *Wilder*, 1 *West's Rep.* 324. 1 *Atk.* 421, *S. C.*) And the purchaser who buys the estate under such a decree, must accept the order of the court for a future conveyance by the infant as a sufficient security for his title. (*Powell* v. *Powell, Mad. & Geld. Rep.* 53.) The court will also protect the purchaser, by injunction, against the infant or those claiming under him, in the enjoyment of the estate until the legal title shall be actually transferred according to the directions of the decree. The court in such a case also so far protects the purchaser under the decree, that it will not permit the infant, when he becomes of age, to impeach the title for mere error in the decree. (*Bennet* v. *Hammil*, 2 *Sch. & Lef.* 566. 1 *Daniel's Ch. Pr.* 228.) If it were necessary, therefore, to resort to the common law powers of this court to make a sale under a decree in partition valid and effectual, against the inchoate rights of dower of the wives of some of the tenants in com-

mon, it will be seen that the means are generally within the reach of the court if it thinks proper to employ them.

Upon a careful examination, however, of the several provisions of the revised statutes relative to the partition of land, in connection with the former legislation on the same subject, I have arrived at the conclusion that a sale by the commissioners in partition under the judgment of a court of law, or by a master in chancery under a decree of this court, will of itself be sufficient, without any act of hers, to bar or extinguish the contingent right or interest of the wife of one of the tenants in common in the land, where she is made a party to the suit with her husband, whether she is an infant or an adult. The six last sections of the revised act of 1813, for the partition of lands, (1 R. L. 513,) contained new provisions which were intended to remedy defects in the previous law on that subject, and to reach the various estates and interests of all persons in the several undivided shares of the premises held in common, in which premises some of the parties to the suit had a present estate as a tenant in common for life, either as tenant by the curtesy or in dower or otherwise; so as as to make the partition, or a sale under the judgment or decree, valid and binding as to every estate or interest in an undivided share of the premises, whether present or future, vested or contingent. This act however was found defective in two particulars: 1. That it did not authorize a widow who had a present right of dower in the whole premises to be made a party to the proceedings, although that dower still remained unassigned; and, 2. That no provision was made for making creditors, who had liens upon some of the shares of the tenants in common, parties to the proceedings, nor for the payment of their debts out of the proceeds of the shares on which such debts were a lien. The revisers therefore provided for these two defects, in the new provisions which they introduced into the revised statutes on this subject; retaining substantially all the previous provisions of the act of 1813, and the acts of April, 1814, amending the same, in relation to the barring of other future and contingent interests by a sale of the premises under the judgment or decree. That it was the intention

of the revisers to enable the courts to give to a purchaser under the judgment or decree, when a sale of the premises was found to be necessary, a perfect title as against every future or contingent interest in any undivided share of the property, is evident from the note which they appended to the new provisions introduced by them in relation to incumbrances on such shares. Indeed, without such a power, it would be very difficult to make the partition equal in the case of a sale; as a contingent right of dower or other defect in the title as to one share in the property must, upon a sale, necessarily diminish the amount bid for all of the shares collectively. The same difficulty, therefore, would exist in determining the value of a wife's inchoate right of dower in the undivided share of her husband, for the purpose of dividing the proceeds of the sale among the different tenants in common according to equity, as is apprehended by the counsel to exist in making a suitable provision for this contingent right of the wife, out of the whole of the proceeds of her husband's share of the sale, if she chose to insist upon her right to such a provision. And in addition to that, the fact that the title in the hands of the purchaser would be incumbered with a contingent right of dower of a feme covert, in an undivided share of the premises, which might subject the owner to future expense and litigation, would diminish the value of the property in the hands of the purchaser to more than double the actual value of such a contingent right. I cannot believe that the legislature intended to leave this contingent interest, or inchoate right of dower of the wife of a tenant in common, an incumbrance upon the title in the hands of a purchaser, any more than that it was intended that a similar contingent interest of the husband in the wife's property should remain an incumbrance thereon. Although the husband has a present interest in his wife's real estate from the time of the marriage, for the joint lives of himself and wife, he is not even a tenant by the curtesy initiate, so as to give him an estate for his own life in the premises, until the birth of issue. And I believe it has never been doubted that a sale in a partition suit, to which he was a party, either under the act of 1813,

or under the provisions of the revised statutes, would have the effect not only to divest his present estate in the property during the joint lives of both, but also to bar his contingent interest in the property, for the remainder of his life after the death of his wife, in case he should afterwards have issue and should survive her. Yet I have not been able to find any provision in the revised statutes which can reach such a case which is not equally applicable to the wife's inchoate right of dower in the husband's estate. The provisions of the statue referred to by the vice chancellor relative to estates for life in curtesy or dower, (2 *R. S.* 325, § 50 *to* 55,) do not in terms cover either of the cases before referred to. And if in either case there should be such a disagreement between the husband and the wife as to render it necessary for the court, in providing for the legal rights of each, to settle their proportions of the proceeds of the sale, and if there was no other way to protect their rights than to ascertain the present value of the contingent interest of the husband or wife in such proceeds, it would be much easier to ascertain the present value of the wife's contingent right of dower than to ascertain the value of the husband's chance of becoming a tenant by the curtesy, not only by surviving his wife but also by becoming the father of a child by her. Indeed the annuity tables have furnished the court with the means of ascertaining the probable value of the wife's contingent right of dower during the life of the husband. These tables show the value of annuities which depend not only upon the continuance of single lives of different ages, but upon the continuance of two or more joint lives. The proper rule for computing the present value of the wife's contingent right of dower, during the life of the husband, is to ascertain the present value of an annuity for her life equal to the interest in the third of the proceeds of the estate to which her contingent right of dower attaches, and then to deduct from the present value of the annuity for her life, the value of a similar annuity depending upon the joint lives of herself and her husband; and the difference between those two sums will be the present value of her contingent right of dower. (*McKean's Pr. L. Tables*, 23, § 4. *Hendry's Ann. Tables*, 87, *Prob.* 4.) Should it be necessary, in the case of an

infant or an adult wife, for the court to protect her contingent right of dower upon a sale under a decree in partition, where the value of the husband's undivided share of the estate was such as to render it proper, the present value of that contingent right may be ascertained in that manner. And the amount may be invested in the Trust Company, or in a savings bank, in the name of the register, to accumulate for her benefit during the joint lives of herself and her husband; so that the whole accumulated fund may then be paid over to her, or her personal representative, at that time, in full of her share in the proceeds of the sale. Her rights may also be effectually protected by directing the whole proceeds of the husband's share to be paid over to him, upon his giving security to the register or clerk that the interest or income of one third of such proceeds shall be paid to his wife after his death, during the term of her natural life, if she survives him.

Although the revised statutes have given specific directions as to the mode of ascertaining and securing the shares of the proceeds belonging to the tenants in dower and by the curtesy, and other tenants for life having present estates in possession in the premises, there is still a large class of future estates, both vested and contingent, in lands which may be sold under judgments and decrees in partition, that are not embraced in those specific directions. In all such cases it will be the duty of the court to ascertain and settle the value of such future estates and interests upon just and equitable principles, and to make such order as may be necessary for the protection of the shares of the fund which may belong to the persons who then are or may thereafter be the owners of such future estates or interests; in analogy to the express provisions of the statute relative to the shares of parties who have present estates for life in possession. I cannot, therefore, concur in the opinion of the vice chancellor, that the neglect of the legislature to make a specific provision for the ascertainment of the value of the wife's contingent right of dower, and to secure the same for her benefit, is any evidence that it was intended to leave that, or any other future or contingent interest of a party to the

1839.

Jackson
v.
Edwards.

suit, as an incumbrance upon the title of a purchaser under the judgment or decree.

To show it must have been the intention of the legislature to bar all such future and contingent rights by the sale, so as to give a perfect title to the purchaser, I will refer to some of the provisions of the revised statutes on the subject. It may be proper in the first place, however, in answer to a suggestion of the counsel for the appellants, to remark that whatever estates or interests in the premises may be divested by a sale in partition under the judgment of a court of law will also be divested by the conveyance of the master under a decree of this court; the jurisdiction and powers of courts of law and of this court being concurrent, so far at least as concerns the legal title to the lands of which partition is sought by the suit in either court.

The fifth section of the title of the revised statutes relative to the partition of lands, (2 *R. S.* 318,) requires the plaintiff, in his petition, to set forth the rights and titles of all persons interested in the premises, so far as is known to him, including the interest of any tenant for years, for life, by the curtesy, or in dower, and the persons entitled to the reversion, remainder or inheritance after the termination of any particular estate therein, and every person who by any contingency contained in any devise, grant, or otherwise, may become entitled to any beneficial interest in the premises. This language is certainly broad enough to include the contingent right of dower of the wife of one of the tenants in common, as well as other future or contingent interests. And the next section authorizes every person having such an interest as is mentioned in the fifth section, whether the same is in possession or otherwise, and every person entitled to dower in such premises, if the same has not been admeasured, to be made a party to the suit. The special provision in relation to dower was inserted in this section to reach the case of a doweress who was entitled to an estate as tenant in dower in the whole premises; as the supreme court had decided that the provisions of the revised law of 1813 did not reach the case of a doweress whose husband was not a tenant in common of an undivided share of the

estate. (See *Coles* v. *Coles,* 15 *John. Rep.* 319.) The language of the seventh, tenth, eleventh, twelfth and thirteenth sections of this title as originally passed, are equally comprehensive with the fifth ; and show that it was the intention of the revisers and of the legislature that the owner of every future and contingent interest, whether known or unknown, as well as the owners of present interests, should be made parties to the suit ; and that their several rights and interests should be ascertained and settled by the court before a judgment or decree for a partition or a sale of the premises should be made. By the 61st section, the conveyance which is directed to be executed by the commissioners, under a judgment for sale of the premises, is declared to be a bar both in law and equity against all persons interested in the premises *in any way,* who shall have been named as parties in the proceedings; and against all such persons or parties as were unknown, if notice of the application for partition shall have been given by publication as directed by the statute ; and against all other persons claiming from such parties or either of them. And by the 84th section, the same force and effect is given to a master's deed, under a sale by virtue of a decree of this court. I am, therefore, compelled to declare that the opinion of the vice chancellor, as expressed in this cause, and in the case of *Matthews* v. *Matthews,* (1 *Edw. Ch. Rep.* 565,) as to the effect of a sale in partition upon the inchoate right of dower of the wife of a tenant in common who has been made a party to the suit in conjunction with her husband, is erroneous; and that a purchaser under the judgment or decree will be protected against any future claim on her part, both in equity and at law.

The orders appealed from cannot, therefore, be sustained upon the ground on which the vice chancellor placed his decision. If the purchasers had placed their objections to the title upon this ground alone, originally, or if the complainants immediately after the sale had offered to obviate the objection that the contingent remaindermen under the deed of settlement had not been made parties to the suit, by procuring a deed of appointment from Mrs. Edwards with-

out delay, I should think it my duty to reverse these orders of the vice chancellor, and to compel the purchasers to take the title to the lots bid off by them at the master's sale. But I should not have charged them with costs for refusing to take a title which had been declared to be defective by a reported decision of the court under whose decree the sales were made, which decision had not then been overruled by a higher tribunal.

As this court will not give a purchaser at a master's sale the benefit of his purchase, where he has neglected to comply with the terms of sale within a reasonable time, if a resale of the property is deemed more beneficial to the parties interested in the proceeds of the sale; so neither will it compel him to take the title, where by the fault of the parties thus interested, and without any captious objections to the title on his part, the completion of the sale has been delayed so long that he cannot have the benefit of his purchase, substantially, as if the sale had been completed and the title given at the time contemplated by the terms of sale. In this case there was a valid objection to the title which was not removed until a long time after the sale; and no attempt was made to remove it until the property had depreciated in value, so that the purchasers must now be great losers if they are compelled to take the property at the prices for which it was sold. The effect of compelling purchasers to take a title upon a master's sale, under such circumstances, must necessarily be to deter bidders from attending and purchasing property under the decrees of this court. The several orders appealed from are, therefore, right; not for the reason that it is now impossible to make a good title, but because the purchasers ought not to be required to take even a good title after such a delay as had occurred at the time those orders were made, when the purchasers could not have the substantial benefit of their respective purchases.

The orders appealed from are, therefore, affirmed with costs. But as these appeals have been for the benefit of all the other parties interested in the proceeds of the sale, as well as the complainants, such costs, together with the ap-

pellants' own costs in this court, are to be paid out of the proceeds of the property on a re-sale thereof. And the proceedings are to be remitted to the vice chancellor, with directions to him to make the necessary orders to discharge these purchasers and for a re-sale of the property ; and also, to make such a disposition of a portion of D. S. Jackson's share of the proceeds of the several sales, under the decree, as may be necessary to secure to his infant wife a fair equivalent for the value of her contingent right of dower, in case she survives her husband, so far as she has not been already secured by obtaining a similar interest in the lands conveyed to him in severalty under the master's sale.