In the matter of Turner.

ST. LAWRENCE SPECIAL TERM, Feb. 1851. *Hand,* Justice.

In the matter of PETER C. TURNER and others.

A father conveyed to two trustees a farm, for the consideration of *one dollar*, and to insure to his son, P. C. T., a reputable support and maintenance during his natural life, and provision for any children he might have in lawful wedlock at his death, *in trust*, to receive the rents and profits, and apply them to the use of P. C. T. during his natural life. But instead of leasing the property, the trustees were allowed, by the deed, to suffer and permit P. C. T. to reside upon and cultivate the premises, and use the proceeds and profits arising from the cultivation, for his maintenance, support

.In the matter of Turner.

and profit. And on the son's death the trustees were to convey to his children lawfully begotten, if any, in equal shares as tenants in common; and if he died without leaving lawful issue, then to reconvey to the grantor, in fee; and if he died before the son, the son being without issue, then the father might by his will direct and appoint in what manner the trustees should convey the same. The deed also provided for the death of the trustees, and contained a covenant by them, to and with the father, and to and with the son, well and faithfully to execute the trust, and to convey the trust property according to the provisions of the deed. And if any contingency happened, not provided for, the deed 'clothed the chancellor with power to make all decrees necessary to carry the purposes of the trust into execution. *Held* that the court had no power, upon the petition of the grantor, the *cestui que trust*, and the trustees, to order the property to be *sold*—although a state of facts was shown from which it appeared that a sale would be advantageous to the cestui que trust—inasmuch as a sale would be contrary to the provisions of the grant, and because the remaindermen were uncertain and could not yet be ascertained.

*It seems* that even in a case of *personal estate* thus situated, the fund would not be applicable to maintenance; the rule being that where there is any valid limitation over, however contingent, maintenance can not be allowed, unless provided for in the grant or will by which the fund is created.

THIS was a petition for an order to sell real estate, held in trust; and partly, for the benefit of infants. The petition showed that Duncan Turner retired from mercantile business in 1830, and took possession of a farm in the county of St. Lawrence, which the petitioners desired to sell, and that could be sold for $6000. In 1836 he established his sons, Peter C. Turner and another in mercantile business in Ogdensburgh, with a capital of $10,000. Peter, having bought out his brother, became intemperate, and in 1840, embarrassed, upon which Duncan closed up the business and paid his debts, advancing some of his own money for that purpose. Peter promised to reform his habits, and in the summer of 1841 Duncan placed him upon the farm, which was then in good repair, well stocked and furnished with farming utensils. Peter became temperate and so continued two or three years, when he relapsed into his former habits, and to a degree that somewhat impaired his faculties, and so remained. In 1844 or 1845 he married a domestic, having no property, and there was issue two sons, one four and the other two years of age, of this

marriage. The stock and farming utensils were all gone, the mansion house in a ruinous state of dilapidation, the property could not be rented for more than about $150, and two years income would be required to put the premises in a situation to be productive, and Peter had become incapable of managing his affairs to advantage, or of supporting his family from the farm, and was getting destitute of most of the comforts and conveniences of life. Duncan Turner was an aged man, and had five other children, to whom all he had given, or could give, respectively, would not be half as much as he had already expended for Peter, including this property, and was unable to assist him any more.

On the 20th of September, 1841, Duncan Turner conveyed to Bishop Perkins and James G. Hopkins, Esquires, this farm for the consideration of $1, "and to insure to my son Peter C. Turner a reputable support and maintenance during his natural life, and provision for any children he may have in lawful wedlock at his death." The deed contained the usual *habendum* clause, including the rents, issues and profits ; *in trust* to receive the rents and profits and apply them to the use of Peter during his natural life. But instead of leasing the property they were allowed to suffer and permit Peter to reside upon and cultivate the premises, and use the proceeds and profits arising from the cultivation, for his maintenance, support and profit. And on Peter's death they were to convey to his children, lawfully begotten, if any, in equal shares, as tenants in common, and if he died without leaving lawful issue, then to reconvey to Duncan in fee; and if he died before Peter, the latter without issue, then Duncan might, by his will, direct and appoint in what manner the trustees should convey the same. The deed also provided for the death of the trustees; contained a covenant to and with Duncan, and to and with Peter, well and faithfully to execute the trust and convey the same according to the provisions of the deed; and if any contingency happened, not provided for, it clothed the chancellor with power to make all decrees necessary to carry the purposes of the trust into

execution.   The deed was executed by D. Turner and the trustees.

The petition prayed that guardians might be appointed to protect the reversionary interest of the children, and that they, with the petitioners and Peter, might sell the farm, and invest the proceeds under the direction of the court.   There was also a prayer for general relief.   The petition was signed and veri- fied by Duncan Turner and the trustees.   Peter C. Turner, also, in a short petition annexed, stated that he was unable to obtain his support from the farm, and joined in the application for a sale.

*B. Perkins,* for the petition.

HAND, J.   The petition makes out a strong case, and if the court has power to grant the relief, I have no doubt to do so would be advantageous to all that are now interested in this trust.   The state of the property and the situation of his son and of his son's family have, it is to be feared, in a great meas- ure frustrated the kind intentions and the liberality of this venerable and excellent parent.

It is clear from the petition that the income would be greatly increased by a sale, and, in the language of an eminent chan- cellor in a similar case, " I wish very well to the application if I can find a principle upon which it can rest."   But, notwith- standing some early decisions, it seems clear that this property can not be sold.   In the first place, it would be against the pro- visions of the grant.   The power to sell the real estate of an infant depends upon statute.   (*Rogers* v. *Dill,* 6 *Hill,* 415, *and the cases there cited.*   2 *R. S.* 194, 5, §§ 170, 175, 176.   *Garm- stone* v. *Gaunt,* 9 *Lond. Jur.* 78.)(*a*)   And the statute declares " no real estate or term for years shall be sold, leased or dis- posed of in any manner against the provisions of any last will, or of any conveyance by which such estate or term was devised or granted to such infant."   (2 *R. S.* 195, § 176.)   In one of

(*a*)  This case (*Garmstone* v. *Gaunt*) is also reported in 1 *Collyer's Rep.* 577.

the cases cited by Nelson, C. J. in *Rogers* v. *Dill*, the counsel finally admitted there was no relief except by an application to parliament. (*Russell* v. *Russell*, 1 *Molloy*, 527.) Now the power is given by statute, with the above exception. This restriction was intended to carry out the will of the donor, which in some cases of personal estate has been strangely disregarded, (*Barton* v. *Grant*, 1 *Vern.* 255. *In the matter of England*, 1· *Russ & My.* 499. *Hill on Trustees*, 398,) and to an extent to jeopard the whole fund, even where it was given over after a life estate. (*In the matter of Bostwick*, 4 *John. Ch. Rep.* 100.)·

As the donor in this case joins in the petition, this can hardly be said to be contrary to his present wishes; and it might therefore be insisted that the case is not within the spirit, though within the letter of the statute. Particularly as the property is to be reconveyed to him, if Peter dies first, without issue; and if Peter survives him and then dies without issue, it is to be conveyed in the manner the donor shall direct and appoint by his will. These events are now quite improbable; but if it were otherwise, not having reserved the power to alter the disposition, his will, as expressed in the deed creating the trust, must be our guide.

But another insuperable objection renders it unnecessary to inquire into the nature of Duncan Turner's rights during the life of Peter. (*See Jackson* v. *Robins*, 16 *John.* 537; *Jackson* v. *Edwards*, 22 *Wend.* 498; *S. C.* 7 *Paige*, 386; *Hoy* v. *Master*, 6 *Sim.* 568; *Bradford* v. *Street*, 16 *Ves.* 135; *Reid* v. *Shergold*, 10 *Id.* 370; *Bradley* v. *Westcott*, 13 *Id.* 445; 1 *R. S.* 733 *to* 735.) If he were to confirm a sale by publishing his will making an appointment agreeable to that· sale, still, that from its very nature is revocable and ambulatory. (4 *Kent's Com.* 336.)

In the principal case there may be other children hereafter born, who may, in case of the death of the two now living, be entitled to a conveyance of the whole estate on the decease of Peter Turner. (*See remarks of Bronson, J. in Champlin* v. *Haight*, 7 *Hill*, 246.) But were there no restraint imposed by the statute, there could be no sale, as the person finally. en-

In the matter of Turner.

titled to the estate can not yet be ascertained. Were it certain that Peter would leave issue, him surviving, it seems that, even in cases of personal estate, the difficulty would not be removed. Some of the old cases were decided the other way. Indeed, in one case, the will gave the property first for life, and then to the use of the children of a daughter, " then born or thereafter to be born," as tenants in common, and their respective heirs forever, with a direction for an accumulation; and the vice chancellor said, " the children born and to be born have a common interest, and therefore the increase of the fund is in this case applicable to maintenance." (*Haley* v. *Bannister*, 4 *Madd.* 280.) He must have considered it sufficient that the estate belonged to a class, whether all were yet *in esse* or not. But I understand the rule now to be, both here and in England, that where there is any valid limitation over, however contingent, maintenance can not be allowed unless provided for in the grant or will. Where the fund is given absolutely to a class of infants, with right of survivorship—that is, where all have an equal chance of surviving, and a present interest—an allowance may be made. If those not *in esse* may take; as if to children born and hereafter to be born; or to children, and in case of the death of any before 21, to the issue of the latter; or if limited over to strangers, maintenance will be denied. (*Errat* v. *Barlow*, 14 *Ves.* 202. *In re Davison*, 6 *Paige*, 136. *In re Ryder*, 11 *Id.* 185. *Errington* v. *Chapman*, 12 *Ves.* 20. *Kebble, Ex parte*, 11 *Id.* 604. *Fairman* v. *Green*, 10 *Id.* 45. *Turner* v. *Turner*, 4 *Sim.* 430.) If the gift be over to strangers, who consent, that difficulty will be obviated. In these cases of maintenance to which I have referred, there was no attempt to sell real estate, but the principle applies with full force. The declaration that the object is to insure a reputable support and maintenance to Peter C. Turner, &c. can not affect or alter the other plain provisions of the grant.

　　　　　　　　　　　　　　　　　　Motion denied.