## DAWLEY vs. BROWN.

If there are cases in which a court of equity may decree a sale and conveyance, by a master, of land, without requiring the owner of the legal estate to unite in the conveyance to the purchaser, or to convey to a receiver, the case of a sale of land fraudulently conveyed by a judgment debtor, and which sale has been set aside by reason of the fraud, is not one of them.

· When, in an action brought by a judgment creditor, to set aside a conveyance made by his debtor, as fraudulent against creditors, the deed is declared fraudulent and void, and a referee is appointed, and ordered to sell the premises; who sells the same, at public auction, and executes a deed thereof to the purchaser, no title will pass thereby; by reason of a total want of power in the court to authorize the referee to sell; but the title will remain in the grantee in the fraudulent conveyance, and pass by his deed.

The pendency of an action brought against persons claiming title under a referee's deed, to set aside such deed as fraudulent, and for the recovery of the possession of the premises, may be pleaded in abatement of, or as a bar to, subsequent actions brought by the same plaintiff against each of the defendants in that action, to recover the possession of the same premises, and for mesne profits.

IN March, 1857, the plaintiff owned the premises which are the subject matter in dispute in this action, and on the 15th of that month, he and his wife conveyed them to Loren Culver. At the same time the plaintiff was indebted to Hiram Johnson, and on which indebtedness Johnson subsequently obtained judgment against the plaintiff and one Willett, and in December, 1858, after the recovery of said judgment, he commenced an action in this court to set aside the deed to Culver as fraudulent as against the plaintiff creditor. That deed was declared fraudulent and void, and a referee was appointed, and ordered to sell the premises so fraudulently conveyed; and he did sell them at public auction, and gave a deed of said premises to Johnson, the purchaser at such sale.

Johnson was put into possession of said premises, and subsequently, in 1861, conveyed them to Daniel Sage, with covenant of warranty. The defendant claims under Sage.

In March, 1869, and after the death of Johnson, the

plaintiff commenced an action in this court against Johnson's executor, Culver and others, to set aside the deeds from the referee to Johnson, and from Johnson to Sage, and that the plaintiff be restored to possession.

In July, 1869, an order was obtained by the plaintiff, discontinuing said action as to all the defendants except Brown and one Fox, then in possession of another part of said premises embraced in the referee's deed.

Said order also allowed the plaintiff to amend his complaint so as to claim possession of the premises without mesne profits, and that the plaintiff have judgment for the possession of the premises, declaring him owner in fee, with costs of the action. Judgment was obtained against Fox and Brown in said action, upon said amended complaint, by default. Execution was thereupon issued and the plaintiff put into possession.

Brown and Fox, severally, agreed in writing to pay the plaintiff for thereafter pasturing their cattle on said lands.

In July, 1869, Culver and wife conveyed the premises deeded to him by the plaintiff, in March, 1857, but the deed was not acknowledged by the wife. On the 26th of the same month, the judgment last mentioned was vacated by this court, and the defendants Brown and Fox reinstated in possession. That suit is still pending and undetermined. This action of ejectment is brought by the plaintiff to recover the possession of the premises so as aforesaid sold by the referee to Johnson, and for mesne profits.

The defences are, 1st, a general denial; and, 2d, the pendency of the action against Brown and Fox, to recover possession of the same premises.

The issues were referred for trial to a referee, who decided that the sale by the referee, to Johnson, was void and vested no title in him, and consequently that Culver remained owner in fee, and the title was revested in the plaintiff, by the conveyance from Culver, and

ordered judgment in favor of the plaintiff, with costs. From that judgment the defendant appealed.

A similar action, brought by Dawley against George D. Fox, and presenting the same facts and questions of law, was tried before the same referee, and with the same result.

*E. G. Lapham*, for the appellant.

I. The plaintiff, by the record, is convicted of fraud in disposing of this property to Culver, and no view of the case ought to be indulged which will enable him, by such a reconveyance as he now sets up, to defeat the judgment rendered against him. The position of the referee that the attornment was valid, cannot be upheld. The plaintiff also has been condemned, by the verdict of a jury, for fraud in relation to this property, and ought not to be allowed to avail himself of the fruits of another fraud to escape the consequences of the first. He is not entitled to any standing in court to enable him to recover this property.

II. The referee erred in his refusal to decide that the first action was a bar to the maintenance of the present. This is so, whether the original or amended complaint is to be treated as the complaint therein. In both the recovery of the possession is claimed; in the first, with an account for mesne profits; in the second, for the possession, without such profits. Suppose the alleged possession of the plaintiff, taken in July, 1869, had not been disturbed, and the judgment entered not set aside, could it be claimed that the present action was proper? The words, "the same parties," in the third subdivision of section 144 of the Code, cannot be construed to mean the identical persons, and none others, who are parties in the second action. If so, a plaintiff having prosecuted two or more persons for a given cause, could bring a second and separate action against each, for the same cause. The same persons who are parties to the present

action are also parties in the one pleaded in bar. The plaintiff is the same, and the same relief is sought; and this is the test of identity. The referee.has decided the action was sufficient to vest possession in the plaintiff, and to render valid the deed from Culver, during its ·continuance, while at the same time holding it as an action for the same cause and between the same parties. True, the first action was first framed for equitable relief, but that does not determine the question. A party having the election to seek equitable or legal relief for the same cause, is bound by his election when made. If the same is sought in the first, as in the second action, although coupled with a claim for other relief, the result is the same. Could Johnson, after having commenced his action to set aside the deed from the plaintiff to Culver, and while that was pending, have sold the land on execution and then brought another action to recover possession? No matter what may be the form of the first action, if the same relief is sought, it constitutes a bar. (*Groshon* · v. *Lyon*, 16 *Barb.* 461. *Ogden* v. *Bodle*, 2 *Duer.* 611. *Mills* v. *Block*, 30 *Barb.* 549. *Morris* v. *Rexford*, 18 *N. Y.* 552. *Draper* v. *Stouvenel*, 38 *id.* 219.) The case in 16 *Abbott*, 98, cited in the opinion of the referee, has no application to the . question in this case.

III. The·judgment in the case of *Johnson* v. *Dawley*, is conclusive upon the parties, until reversed or set aside, and cannot be attacked collaterally. The court had jurisdiction· of the parties and of the subject matter. The cases in 19 *N. Y.* 369, and ·36 *Barb.* 592, do not apply to the questions here involved. The first was a contest between judgment creditors. The plaintiff was not a party to the action in which the fraudulent assignment was set aside and the sale ordered. It is conceded if he had been such party the judgment and sale would have bound him. The judgment under which the plaintiff claimed was a lien on the premises before the action

to set aside the assignment was commenced, and the judgment creditor not having been made a party, it was held he was not bound by the decree and sale. The case in *Barbour* was a bill filed by a purchaser, under a decree directing a sale by the sheriff as upon execution, to set aside a deed by the sheriff to a creditor who had redeemed, and to compel the sheriff to execute a deed to the plaintiff, who had received none at the time of the sale. The plaintiff had judgment at the Special Term. This was reversed by the General Term, and the complaint dismissed, without costs to either party. The court in that case say, the plaintiff may still apply to the court for a receiver to take a conveyance of the lands. The bill in that case was in the nature of a bill of review, and it was competent for the court to set aside the sale as irregularly made. The question of jurisdiction was not made by the case. The power of the court to order a sale and conveyance of the land is not questioned, but the mode in which it was done, or the practice followed in the case, is all that is questioned. *In Scouton* v. *Bender*, and three other cases, creditors' bills proper, (3 *How.* 185,) Judge Gridley says: "The court of chancery having obtained jurisdiction of the cause and of the subject matter of it for one purpose, may retain it in order to do full and complete justice to all the parties to the suit." (*Id.* 187.) In the case of *The Chautauqua Bank* v. *White*, (6 *Barb.* 589,) a majority of the General Term disapproved of Judge Gridley's reasoning, and reversed a decree of the vice chancellor affirming the validity of a title made through a receiver's sale. The case was appealed to the Court of Appeals. (2 *Seld.* 236.) Judge Gardiner, in that case, at page 252, says: "The common law powers of the court in reference to fraudulent trusts and conveyances are not touched" by the statute relating to creditors' bills proper. "In all cases of fraudulent trusts the court may, in its discretion, direct a sale by a master,

and compel the debtor and trustee to unite in the conveyance to the purchaser; or it may order an assignment to a receiver, as was done in this case, or the fraudulent conveyance may be annulled, and the creditor permitted to take execution," &c. In that case, the assignees and debtor had made a general assignment to a receiver under the order of the court. Judge Gridley, in his opinion, at page 254, says of the order and decree directing a sale: "Although the order may have been too broad and extensive, and therefore erroneous or irregular, yet it was not void, and cannot be questioned in a collateral suit. I say it is not void, because the court had jurisdiction of the parties and of the subject matter; so that any decree affecting the real estate would not be void, though it might be erroneous." And again, page 255, he adds: "In England, as well as in this State, the court of chancery has often exercised the power to order real estate to be sold." Among the cases he cites is *Sands* v. *Codwise*, (4 *John.* 536,) where the real estate in controversy, which it was charged was fraudulently disposed of, was ordered to be sold by a master, and that Lewis Sands, the fraudulent grantee, unite in a deed to the purchaser, and that the master take an account of the rents, page 543. The case was taken to the court of errors. The chancellor, page 576, says: "I thought it was not necessary to appoint a receiver, a master being competent to discharge the duty required, in order to give the decree effect." Judge Spencer, in his opinion, says, page 602: "I see no objection to the decree in directing a sale of the estates. It is the consummation of the remedy sought for. A sale by a master is a judicial sale, and binds all the parties to the suit who have right or claim." In *Reade* v. *Livingston*, (3 *John. Ch.* 481,) a similar decree was made. In *Edmeston* v. *Lyde*, (1 *Paige*, 637,) the decree directed the land to be sold by a master, and that the defendants, if required by the purchaser, join in the conveyance. In *Bank of*

*U. S.* v. *Housman,* (6 *id.* 526,) a sale was directed by a master, without any direction for a conveyance from the debtor. In *Bennett* v. *Hamill,* (2 *Sch. & Lefroy,* 565,) the lord chancellor decided, on a bill filed for the purpose of setting aside a sale by a master and of obtaining a deed from the grantee of the purchaser at such sale, that such purchaser is not affected by errors in the decree for which it might be reversed ; and he cites, with approval, the case of *Lloyd* v. *Johnes,* (9 *Vesey, Jr.,* 37,) where there was no conveyance made to the purchaser ; and yet Lord Eldon held the grantee of the purchaser without any conveyance under the order of the court, was protected. The general doctrine that courts of equity act upon the person in order to enforce their decrees, need not be questioned. It is indispensable to the exercise of their power when the land which is the subject of a decree is not within the jurisdiction of the court. When the lands are within the reach of the process of the court it will not rely wholly on proceedings *in personam,* but put the successful party in possession. (*Story's Eq. Jur.* § 744, *and cases cited in note to the section. Newland on Cont.* 305, 306. 1 *Smith's Lead. Cases,* 792.) The decree directing Huson to sell as a referee, was the same as the former direction for a sale by a master ; and if there were any defect or error in the decree the remedy was by appeal. This principle is very fully illustrated in *The People* v. *Sturtevant,* (9 *N. Y.* 263,) in the opinion of the court. Under these authorities, it is clear that the omission in the decree in question of a clause requiring the plaintiff and Culver to join in the deed to the purchaser, was at most an irregularity or omission in practice, of which no complaint was made at the time, and which, after the lapse of a year, was cured by the statute. (2 *R. S.* 359, § 2.) Again ; we insist that the plaintiff is not only estopped by the record, but by his acquiescence for so long a time from now questioning the title of the defendant. He

was a party to the suit, and knew this sale was made to satisfy the judgments and costs against him. The purchase price was nearly the full value of the land, as found by the jury, and was applied to discharge his debt to Johnson, and operates as such discharge. He gave up possession to Sage, who had purchased from Johnson, and made no complaint of this sale till Sage had sold to the defendant, who purchased in good faith and for value. If a party sees his land sold to another, and make no objection, he is estopped from claiming title. In *Sherman* v. *McKeon*, (38 *N. Y.* 266,) it was held that a person who received damages upon a proceeding by the corporation of New York for street improvements thereby waived both the statute of frauds and a constitutional provision made for his benefit; though he subsequently took possession in hostility to the claim of the corporation, which he afterward surrendered to the party claiming under the corporation deed. In that case the court say, the receipt of the money operates as an estoppel, and the damages have the effect of a conveyance. He remained quiet, without asserting his claim until the grantee, who paid value, went into possession. (*Id.* 275. *Baker* v. *Braman*, 6 *Hill*, 47. 3 *Comst.* 511.) Here the plaintiff did not actually receive the money, but it was applied to satisfy his debts. His fraudulent grantee had no right and has never made any complaint, and this action was not commenced, nor any claim made until after the lien of Johnson's judgment had expired by lapse of time, and the title had passed to a *bona fide* purchaser. In *Clemens* v. *Clemens*, (37 *N. Y.* 59,) which was a bill to compel a purchaser to complete his title, it was decided that when non-resident minor defendants acquiesce in a decree *pro confesso* for six years after they become of age, they will be estopped from controverting such decree afterward. In *Hogan* v. *Hoyt*, (37 *N. Y.* 300,) where a sale was made by the sheriff, instead of

L. R. Miller, who was appointed a referee to make the same, to which sale the party complaining made no objection at the time it was sold, he was held estopped from setting up the irregularity against a purchaser in good faith.

*John Van Voorhis*, for the respondent.

I. The deed from Huson to Johnson is void. Under this deed the defendants claim. They therefore have no title. Johnson had a judgment, its collection was obstructed by the deed to Culver. He commenced his suit and obtained a decree clearing away the obstruction. That done, he stood in the same relation to the plaintiff and to the land, that he would have occupied had no obstruction been placed in his way. His remedy was to sell the land upon his execution, as the statute directs. If he preferred to get, directly, such interest as the debtor had, at the time of the decree, the court had power, acting on the person of the debtor, to compel him to assign to a receiver. This was not done. The case of *Walker* v. *White*, (36 *Barb.* 592,) decided at General Term in the 7th district, is conclusive of this question. The case of *The Chautauqua County Bank* v. *Risley*, (19 *N. Y.* 369,) is to the same effect. In this case, the reasoning of Judge Comstock, in his opinion, sets the question at rest on principle, even if the case were not authority. If the practice of Hiram Johnson in this case can be sanctioned, then the right of redemption, which the statute gives absolutely to the judgment debtor, can be cut off by the court. This right, Judge Comstock says, is not lost by either a prior fraudulent, or subsequent honest conveyance by the debtor.

II. The plaintiff has a right to rest his title on the deed from Culver to him, dated July 17, 1869. Prior to that deed Culver was the owner of all the land conveyed to him by the plaintiff, as against all the world, except Hiram Johnson. The deed from Dawley to Culver was

not void *per se,* but voidable only as against judgment creditors. It was valid between the parties, and divested the grantor of all his interest in the premises. A deed or assignment "though void as against creditors, is always valid between the immediate parties." (*Burrill on Assignm.* 406. *Averill* v. *Loucks,* 6 *Barb.* 477. *Ames* v. *Blunt,* 5 *Paige,* 13–18, 22. *Upton* v. *Bassett,* *Cro. Eliz.* 445. *How* v. *Henriquez,* 13 *Wend.* 240–243. *Briggs* v. *Palmer,* 20 *Barb.* 405. *Clute* v. *Fitch,* 25 *id.* 428.) The language of the statute is conclusive on this point. "Every conveyance, &c., made with intent to hinder, delay and defraud creditors, &c., as against the persons so hindered, delayed or defrauded, shall be void." (2 *R. S.* 142, *Edm. ed.*) Johnson's decree declares the deed void as to him; but it is valid as against every creditor who did not get such decree. The defendant does not represent Johnson, and is in no manner a privy of Johnson. As to him, the deed to Culver is valid. And Culver could, at any time, have maintained ejectment. Johnson undoubtedly could, at any time, enforce his judgment. It was equally within his power to refrain from doing so; and to this day his judgment remains unexecuted.

III. The deed from Culver to this plaintiff is not champertous. 1. It was made while the plaintiff was in possession of the premises. (*a.*) The referee finds that possession of the land in dispute was delivered to the plaintiff by the sheriff of Monroe county on the 7th day of July, 1869. That while in possession, and on the 17th of the same month, the deed from Culver to the plaintiff was made. And that on the 26th of the same month an order was made reinstating the defendant in the possession. (*b.*) The evidence abundantly justifies that finding. The sheriff returns officially to the execution that he did put the plaintiff in possession. This is *prima facie* evidence at least. (7 *Cowen,* 310. 6 *Hill,* 553. 5 *Denio,* 586.) The plaintiff testified that he was

put in possession on the 7th of July, and was in when the deed was given. The writing signed by the defendant, and by Lissler and Baker, the tenants of Brown, show the plaintiff was in possession. The order of the 26th of July directs, "that the defendants Fox & Brown be reinstated to the possession of the premises." 2. As a foundation for champerty a party must be in possession under a title. (*a.*) A claim of title will not do.. It must be a title, which, if sustained, will give him the land. The defendant was in possession under no title whatever. A void deed is no title. (*Crary* v. *Goodman*, 22 *N. Y.* 170.) (*b.*) A deed obtained by fraud cannot be the foundation for champerty. (*Livingston* v. *The Peru Iron Co.*, 9 *Wend.* 512, 524, *opin. by Savage, Ch. J.*) 3. The possession of Johnson and his grantees is not hostile to Dawley's title, but is in subordination to it and derived from it, and therefore not adverse to it. (*Vandevoort* v. *Gould*, 36 *N. Y.* 643. *Fish* v. *Fish*, 39 *Barb.* 513. *Crary* v. *Goodman*, 22 *N. Y.* 170. *Tyler* v. *Heidorn*, 46 *Barb.* 439, 465. *Webb* v. *Bindon*, 21 *Wend.* 99. *Preston* v. *Hunt*, 7 *id.* 53.) 4. Champerty must be pleaded. There is no such defence in the answer. It is new matter in the nature of confession and avoidance. (*McKyring* v. *Bull*, 16 *N. Y.* 297, 303, 304. *Codd* v. *Rathbone*, 19 *id.* 37, 39. *Pepper* v. *Haight*, 20 *Barb.* 429, 435, 436.)

IV. The claim of a former action pending for the same cause fails. 1. The cause of action is not the same. (*a.*) The former action seeks only equitable relief. This is a purely legal action. (*b.*) The former action affected eighty-five acres of land. The action against Brown forty-eight, that against Fox forty acres. (*c.*) These actions are founded on the deed from Culver to Dawley, made July 17, 1869. The cause of action did not exist before. The former action was begun on March 7, 1869 ; therefore the causes of action cannot be identical. 2. The actions are not between the same par-

ties. (a.) The former action is between the plaintiffs and a large number of defendants. The complaint was amended so as to strike out all the defendants except Fox and Brown. This amendment was held to be irregular at the Special and General Terms, and therefore, that action stands against all the original defendants. The affidavits and notice upon which those orders were made are not in this case. (b.) This action is against Brown alone. The other is against Fox alone. 3. To constitute this defence, the actions must be between the same parties, and for the same cause. (*Code*, § 144. *Kelsey* v. *Ward*, 16 *Abb*. 98.) 4. A test is this : Would either or both of these actions, if commenced first, be a bar to the action commenced March 7, 1869 ? Can it be said that the action against Brown will bar forty-eight acres of that cause of action, and the action against Fox bar forty acres ? The absurdity is apparent.

*By the Court*, MULLIN, P. J. The court of chancery in England has, by decree, directed the sale of land by its masters, and vested title in the purchaser by the master's deed. (*See cases cited by Mr. Noyes in the case of The Chautauqua Co. Bank* v. *White*, 2 *Seld.* 236 ; *Edmeston* v. *Lyde*, 1 *Paige*, 637 ; *The Bank of U. S.* v. *Hauseman*, 6 *Peters*, 526.) These were actions by creditors, to set aside fraudulent conveyances by their debtors, and for a sale of the land fraudulently conveyed ; and the court held the conveyances fraudulent, and directed sales and conveyances by the master. It does not appear by the cases that there was any direction for the debtors to unite in the deeds.

It is probable that such a provision was contained in the decree ; as the chancellor, in *Jackson* v. *Edwards*, (7 *Paige*, 404,) says the ordinary mode in which courts of equity transfer the legal title, upon sale under a decree, is by operating on the parties themselves, and compelling them to join in the conveyance to the pur-

Dawley *v.* Brown.

chaser, so as to transfer their legal titles in connection with the equitable interest of any of the other parties; which equitable interest would be bound by the decree, by estoppel, and would pass by the master's deed without any formal conveyance by the parties having an equitable interest only.   *   *   *

Independent of any statutory provisions, the court was not wanting in power to make a decree which would protect the purchaser at the master's sale, when all persons having a legal or equitable title to the land, that was capable of being released or transferred to the purchaser, were made parties, and when they were within the jurisdiction of the court, so that its process could be made effectual against them, although the parties having the legal title or interest in the lands were infants, or *femes covert.*   He proceeds to say, that in the case of married women, the court would compel them to unite with their husbands in transferring the title, by levying a fine, or in some other way by which the same end could be attained, and in case of infants by directing them to convey when they came of age, and when necessary, by injunction, and by not permitting the infant, on coming of age, to question the purchaser's title.

It cannot be supposed that the chancellor, in 7 *Paige*, ascertained for the first time the extent of the power of his court to sell and convey lands, and we must assume that the sales ordered in the cases in 1 and 6 *Paige* were directed to be made in conformity to the views contained in 7 *Paige;* and if so, those cases are not introductory of a new rule, but applications of the well settled rules which govern courts of equity in selling real estate.

If these are cases in which a court of equity may decree a sale and conveyance by a master, of land, without requiring the owner of the legal estate to unite in the conveyance to the purchaser, or to convey to a receiver, the case of a sale of land fraudulently conveyed by a judgment debtor, and which has been set aside by rea-

son of the fraud, is not one of them. (*The Chautauqua Co. Bank* v. *White*, 2 *Seld*. 236. *Same* v. *Risley*, 19 *N. Y.* 369. *Walker* v. *White*, 36 *Barb*. 592.)

It was held in these cases, and in others which might be cited, that a creditor who has proceeded to judgment against his debtor, and who finds that the debtor, before judgment, has made a fraudulent conveyance of his land, has three modes in which to obtain satisfaction of his judgment out of said land, viz:

First. To obtain a judgment of a court of equity declaring the conveyance fraudulent, and setting it aside, and then proceeding and selling the land by virtue of his first judgment.

Second. By obtaining in the equitable action, in addition to the provision in the judgment, that the conveyance of the debtor was void, a further provision that a referee be appointed, with authority to sell at public auction, and that he convey, and that the debtor unite in such conveyance; or that a receiver be appointed, and that the debtor assign his interest in the land to him, and that he sell and convey.

Third. He may sell the land on his execution, and the purchaser may then set up the fraud in the conveyance of the debtor, and if established, obtain a judgment entitling him to the possession of the land.

In these cases, the title is not transferred to the purchaser by the conveyance of the master, referee or receiver, but by the conveyance of the owner of the legal estate, either directly to the purchaser or to the receiver, under the order of the court.

The conveyance by the master is necessary to convey the interest of any parties to the action who may have equitable interests in the land which is the subject of the action. (*Jackson* v. *Edwards, supra. Walker* v. *White*, 36 *Barb*. 592.)

I have referred to some of the cases in which it would seem that the court of chancery had held a different

Dawley *v.* Brown.

doctrine, and I have given what seemed to me the ex-planation why those cases appeared to upset the power of a court of equity to transfer the title to real estate by virtue of its own inherent power, and not by virtue of any conveyance of the party whose land is sold.

There are several other cases, which it may be proper to notice, which seem to proceed upon the same view of the law as the appellant's counsel supposes were intended to be put forward in 1 and 6 *Paige*, (*supra.*)

In *Sands* v. *Codwise*, (4 *John.* 536,) the bill was filed by creditors at large to set aside fraudulent conveyances, and for a sale of the land and satisfaction of the judgment out of the proceeds. The chancellor held the conveyance fraudulent, and ordered the debtors to convey to the master, and the master to sell. The court of errors reversed so much of the decree as directed a sale by the master, so that the decree as finally entered, left the creditors to proceed on his execution.

This is in conformity to the views of the Court of Appeals in 2 *Selden* and 19 *N. Y.* (*supra,*) and is no authority in support of the proposition that the court has power to convey, *proprio vigore.*

In *Reade* v. *Livingston*, (3 *John. Ch.* 481,) the decree directed the fraudulent debtor to unite in the deed to the purchaser.

In *Scouton* v. *Bender*, (3 *How. Pr.* 185,) the plaintiff having recovered judgment for a debt against the defendant, filed a creditor's bill, charging, among other things, that a conveyance by the debtor of real estate was fraudulent, praying that it be set aside, the land sold, and the judgment be paid out of the proceeds. The court adjudged the conveyance by the debtor fraudulent, ordered the debtor to assign to the receiver, and the receiver was ordered to sell and appropriate the proceeds among the parties entitled. In that case there was no deed of the land ; if it passed to the receiver at all it was by virtue of the ordinary assignment of

the real and personal property of the debtor. It was held that the real estate passed under the assignment, and the receiver could convey the legal title to the purchaser at his sale.

The case of *The Chautauqua Co. Bank* v. *White*, presents substantially the same state of facts, and the conveyance of the referee was held valid for the same reason.

It being held that the court has not power, in an action by a judgment creditor, to set aside a transfer of his debtor's real estate, to order a sale by a referee or receiver, and to vest the legal title in the purchaser at such sale, by virtue of the deed from such referee, or receiver, it becomes unnecessary to ascertain in what cases, if any, the legal title may be sold and conveyed by an officer of the court by virtue of its judgment; except it be to enable us to determine what effect is to be given to a conveyance by an officer, under a judgment in a creditor's suit in which the owner of the legal estate is not required to join, and does not convey to such officer.

If the court can, in any case, by virtue of its common law powers, sell and convey the legal estate of a party to an action, without the owner of such estate uniting in such conveyance, or conveying to the officer making the sale, and there is no statute limiting such common law power, it would seem to follow that the omission in a judgment, in such a case, to require the owner to join in the conveyance or to convey to the officer, is an irregularity, and does not render void the sale ; on appeal, the court would reverse the judgment.

It was held at an early day that a judgment creditor who had taken out an elegit and extended it on a moiety of the debtor's land, might come into equity and have the lands sold by the court, in order to hasten the payment of his debt. (*Stileman* v. *Ashdown*, 2 *Atk.* 608. *Burton* v. *Smith*, 13 *Peters*, 464. *O'Gorman* v. *Comyn*, 2 *Sch. & Lef.* 137, 150. *Tenant's Heirs* v. *Pat-*

*ton,* 6 *Leigh,* 196.    *Couts* v. *Walker,* 2 *id.* 268.    2 *Story's Eq.* § 1216, *a, b.*)

The elegit was the appropriate execution against real estate, and by it the sheriff was required to deliver to the plaintiff one-half of all houses, lands, &c., wherein the defendant had any sole estate in fee or for life, at the rendition of the judgment, and the plaintiff was authorized to keep possession of said lands until the income thereof paid his judgment.    This remedy was, in many cases, of no practical benefit to the creditor, and therefore it was that equity assumed to sell the moiety on which the elegit had been levied, and out of its proceeds to pay the creditor his debt.    I do not find that in this class of cases a conveyance by the debtor was required.    The court, by its decree, directed the master to sell the moiety seized by virtue of the elegit, and his conveyance transferred the title.    Chancery was carrying into effect the lien acquired at law by the judgment. The court did not limit itself to enforcing the creditor's lien by judgment, but compelled the debtor to appropriate to his creditor all such property as was not liable to be sold on execution.    As to such property the creditor had no legal lien, and acquired none in equity until he had not only recovered judgment at law, but had issued an execution and had it returned *nulla bona.*

As the choses in action of the debtor were thus appropriated by the court for the benefit of the creditors, the right to enforce them by action could only be acquired through an assignment, by the debtor, the appointment of, or assignment to, a receiver became indispensable, as a master in chancery was not designed to discharge such duties.    When the real estate of the debtor had been transferred by him, so that he had no interest therein, on which the judgment became a lien, no reason is perceived why a conveyance from the debtor should be required.    It could not give to the

grantee a better title than the grantor had ; whether the grantee was an officer of the court or a stranger.

Whether the court assumed to appropriate the land fraudulently conveyed by the debtor, or permitted its officer or other person to intervene in procuring its application to the payment of the owner's debts, the fraudulent transfer must be first set aside, and when it is set aside, it is a matter of no moment whether it is sold by the order of the court with or without the concurrence of the debtor. In analogy to the case of the seizure on the elegit, the court sells. by its own inherent authority, to satisfy the judgment, because it is equitable and just that it should do so. It could not be doubted but that a judgment ordering a referee to sell lands that had been fraudulently conveyed, to satisfy the judgment of a creditor and to convey the same, would have been authorized by the cases of *Stileman* v. *Ashdown*, and other cases above cited.

Now because the courts of this State hold that these authorities do not apply to cases of judgment creditors, but. that in such cases the parties holding the legal estate must convey, and would make it proper to reverse a decree authorizing a conveyance by the master, or referee only, is the decree so utterly void, that a purchaser acquires nothing by his purchase under it ?

When it is said that equity has not jurisdiction to grant a particular species of relief, it is not strictly true to say that if the relief sought was granted, the judgment would be void, in the same sense that a judgment of a court is void in a case over which it is forbidden by statute to entertain jurisdiction.

The jurisdiction of the court of chancery has never been defined by statute. In every case presented to it, the question is whether relief has been granted in the courts of England or in this country in cases involving the same or analogous principles. If there has, the case furnishes authority for the court to proceed

Dawley *v.* Brown.

It would be an alarming proposition that a judgment or decree in equity was without jurisdiction and void, because a judge had found what he supposed was a precedent authorizing it, but which, some other court thought did not justify the assumption of jurisdiction.

It may be true that the judgment of a court of equity would be void for want of jurisdiction, as well as that of a court of law, and perhaps it would be so, should it assume to try and determine an action of slander or assault and battery. But when the case is one in which it is doubtful whether jurisdiction can be entertained, and yet it is entertained, the judgment is voidable merely, not void.

When it is said by the courts that a purchaser at a sale by a master or referee, of land sought to be applied by a judgment creditor, in a court of equity, does not obtain the title through the master's deed, but through that of the owner of the legal estate, and that equity never assumes to transfer the title to real estate by a deed from its master, no more is intended than that no precedent is found for it, or the precedents are against it. Should a court assert and act upon the opposite doctrine, it would, or rather might, become a precedent, which would overturn the cases which hold the title could not pass, except by virtue of the deed of the legal owner. If a court of law should hold that a sheriff's deed does not convey the title of the judgment debtor to the purchaser, at a sale on execution, would the judgment be without jurisdiction and void, so that it could be assailed in a collateral action? I apprehend not; and yet that is just the proposition that must be established in order to sustain the position of the respondent's counsel.

While these are my views of the law, they cannot be acted upon so long as the case of *Walker* v. *White*, *supra*, stands unreversed, supported as it is, to some extent, by the cases of *The Chautauqua Co. Bank* v.

*White,* and *The same* v. *Risley, supra.* In *Walker* v. *White,* it was held that the deed of a referee, in a case almost identical with this, did not pass the title to the purchaser, notwithstanding there had been no appeal from the judgment directing the sale.

The case is binding upon us, and we must therefore hold that Johnson did not acquire, by his purchase at the referee's sale, a title to the real estate; but it remained in Culver and passed to the plaintiff by the deed from Culver.

The respondent's counsel set up, by his answer, the pendency of the suit brought by the plaintiff against Brown and Fox, for the recovery of the possession of the same premises, in abatement of the present action. That the former action is still pending, is conceded.

In order that the pendency of an action may be pleaded in abatement, two things must concur: 1st, the two actions must be between the same parties; and, 2d, be for the same subject matter.

The first action is against both Brown and Fox; the second, against each for a part of the lands covered by the first. But in the first action it was not alleged that the defendants Fox and Brown had any joint interest in the same piece of land. Each owned a part of a large tract, in which, the other defendants had, at a prior date, an interest.

There could not have been, in the former action, a recovery against both Fox and Brown. The plaintiff would have been compelled to take judgment against one, and discontinue as to the other. So that in fact, the former suit was, so far as relief was concerned, against but one of the defendants.

It was held in *Reeve* v. *Dolby,* (2 *Sim. & Stu.* 464,) that the pendency of an action by husband and wife against her trustees, could not be pleaded in abatement of a suit by the wife, by her guardian, against her trustees, for the same cause of action. The reason assigned is,

that the first action was the husband's alone, and a decree of dismissal, in it, would be no bar to the second.

This reason cannot operate in this case. If the suit against Fox and Brown, for the same identical parcels of land for which they are separately sued in the second suit, is not to all intents and purposes between the same parties, as to each parcel of land, it would follow that a plaintiff might bring an action against six or any other number of defendants for assault and battery, or other tort, and separate suits against each of the same parties for the same wrong, and the pendency of the former could not be pleaded in abatement of either of the latter.

It is said in *Carthew*, 96, 97, that in trespass against two, each in a separate suit for the same tort, pleaded the pendency of the action against both, and the plea was allowed. (*Bacon's Abr. title, Abatement, m.*) Why may not this plea be pleaded when the first action is against both, and then a separate action against each? The action in which both the defendants are parties, is, in fact, a separate action against each, and it would work great injustice to allow a plaintiff to multiply suits when he can in no event recover against more than one.

I am of the opinion that the defence is good, and that the present action must be held to be abated.

If the provision in the judgment, that the referee sell the debtor's real estate and convey the same, instead of directing an assignment, by the debtor, of the lands, or that he join with the referee in the deed, was a mere irregularity, the omission of Culver or his grantee to take advantage of it, would be fatal to an attempt now to do so. But following, as we must, the case of *Walker* v. *White*, we must hold that there was a total want of power in the court to authorize the referee to sell, and hence the title of the debtor was never divested.

The appellant's counsel is mistaken in supposing that the case was before the General Term for the purpose

Dawley *v.* Brown.

of reviewing the original judgment under which the sale was made. The appeal was in an action brought to set aside the referee's deed in the first action, as wholly inoperative to convey the title.

The case of *Hogan* v. *Hoyt*, (37 *N. Y.* 300,) would be decidedly in favor of the appellant's position were it not that the sale in that case was in an action for the foreclosure of a mortgage, and in that class of cases the court is authorized, by statute, by its master or referee, to convey the title of the mortgagor.

I am at a loss to determine whether the case of *Maloney* v. *Hagan*, has any application to this case. In that case the fraudulent deed was set aside in an action by the judgment creditor, and the court ordered its receiver to sell, who did sell and convey the same. Mrs. Maloney was the wife of the judgment debtor and united with him in the deed, and after that deed was declared void, she brought an action to have her dower set off to her. It does not appear that the debtor assigned to the receiver. If not, then the conveyance was inoperative, as it is in this case. That point was not suggested either by counsel or the judge who gave the opinion of the court, and we should assume, I think, that there was an assignment by the debtor to the receiver; and if so, the case has no application to this.

I am for reversing the judgment, on the ground that the action was abated by reason of the pendency of the action against both Fox and Brown.

Judgment reversed and new trial ordered, costs to abide the event.

[FOURTH DEPARTMENT, GENERAL TERM, at Syracuse, January 7, 1873. *Mullin, Talcott* and *E. D. Smith,* Justices.]