WINTHROP DE WOLF, Receiver, *vs.* JAMES MURPHY *et als.*

Under the statutes of Rhode Island, attachment liens perfected by judgment must be satisfied in the order of the attachments, without reference to the time of the execution sales.

A sheriff's deed after execution sale relates back to the time of attachment made.

A sale by a mortgagee has the same effect as a sale by the mortgaging debtor. A mortgagee's sale relates back to the date of the mortgage, so far as to cut off redemption rights under titles or liens subsequent to the date of the mortgage, and to substitute for such redemption rights the pecuniary surplus from the sale, which surplus is treated as the realty would have been.

As an attachment of realty in Rhode Island covers only the debtor's right and interest in the land, a sheriff's deed conveys only such right and interest, even if it is but a mere right of entry.

If after attachment and judgment the realty attached is sold under a mortgage prior in date to the attachment, the attaching creditor may proceed in equity to enforce his lien on the surplus arising from the sale.

If an equity of redemption is sold under a first attachment, subsequent attaching creditors must protect themselves by asserting at the sale their claims to the surplus.

If an equity of redemption is sold under a second attachment, the purchaser takes subject to the prior right of a first attachment, which, when ratified by a judgment and followed by a sale, avoids the former sale.

One M. before marriage mortgaged, April 11, 1867, certain realty with a power of sale. The mortgagee sold under the power, November 22, 1874, and obtained a surplus from the sale.

S. attached the realty February 21, 1872, and sold it on execution, June 26, 1875.

H. attached the realty November 7, 1873, and sold it on execution, September 26, 1874.

M. (then married) made a second mortgage of the realty, November 10, 1873, his wife joining in the deed and releasing dower: —

*Held,* in a bill of interpleader, that S. was entitled to satisfaction of his debt from the surplus, prior to the claims of H.

A wife's inchoate dower right will be protected in Rhode Island, either by investing one third of the proceeds of a mortgage sale to await the perfection or cessation of such right, or by calculating the present value of her chance of surviving her husband and paying to her at once such calculated sum.

In the case at bar, as it appeared that the wife had released her dower right in the second mortgage made by M.: —

*Held,* that her inchoate dower right in the surplus arising from a sale under the first mortgage passed to and vested in the second mortgagee.

BILL IN EQUITY brought by the receiver of the Franklin Institution for Savings, praying that the respondents might be required to interplead and to set forth and establish their respective claims to a fund in the complainant's hands, being a surplus which remained from the proceeds of a mortgage sale after satisfaction of the mortgage debt.

The facts as found by the court are stated in its opinion : —

*July* 28, 1877. POTTER, J. Murphy, before marriage, mort-

gaged, April 11, 1867, with power of sale, and under the power the complainant as receiver sold the property November 22, 1874, and there is a surplus left in his hands, and the respondents are required in this bill of interpleader to make out their claims to it.

1st. Henry S. Smith attached the mortgaged realty February 21, 1872, and on his execution the property was sold June 26, 1875.

2d. Hopkins and Pomeroy attached the mortgaged realty November 7, 1873, and on their execution the property was sold September 26, 1874.

3d. Murphy made a second mortgage of the same realty to F. D. McFarlane November 10, 1873, his wife joining and releasing dower.

Both attachments and the second mortgage were made before the sale under the first mortgage; but the levy of execution and sale, under the first attachment, did not take place until after the mortgage sale.

It is claimed on behalf of the second attachment, that when the sale took place under the first there was nothing to levy on or sell, as the owner's right had been sold out under the mortgage.

In the present case the dates of the levies are not in question, and are not material except as showing that the levy was made in time to preserve the lien gained by the attachment.

The claims must be satisfied in the order of attachment. By Gen. Stat. R. I. cap. 197, § 1, he who first attaches is to be first paid, before any other claim by attachment or execution, and all others in order of attachment; and see also cap. 212, § 23.

By Gen. Stat. R. I. cap. 212, § 14, the deed vests in the purchaser all the right, title, and interest the owner had at the time of attachment.

And the time of sale is nowhere recognized in our statutes as being of any effect.

The sheriff's deed relates back to the time of attachment, and as to its effect in transferring title is to be considered as if made then; any other construction would enable a debtor and certain creditors to collude, and by contesting the claim of a person who made a first attachment, and postponing judgment until sales

had been made on subsequent executions, to defeat the object of the law.

To hold that the mere fact that the land had been sold away from the debtor would make void a subsequent levy made to effectuate a previous attachment, would introduce confusion into such proceedings. A sale by the debtor himself, after attachment, would prevent a levy. It is believed such a construction of the statutes has never been contended for before.

A sale by the mortgagee can have no more effect than a sale by the debtor. But if it is argued that the mortgagee's sale relates back to the date of the mortgage and cuts off all subsequent attachments, it would in this case be just as fatal to the Hopkins and Pomeroy attachment and to the second mortgage as to the first attachment.

That it does for some purposes relate back to the date of the mortgage is true. It cuts off all rights of redemption by persons claiming under titles or liens subsequent to its date, and in place of this right of redemption it substitutes the pecuniary surplus which, as to all such subsequent claimants, is treated in the same manner as the real estate would have been.

Suppose the debtor himself had conveyed at the date of attachment. His deed would have conveyed his right to redeem, and if the purchaser did not redeem the land he would take the equitable right in the surplus.

That a valid deed by the debtor or by the sheriff would prevent a new levy on the land, *i. e.* one where there was no previous attachment, cannot well be disputed.

Under our system the sheriff does not seize the land attached. He has no right to enter on it except so far as necessary to serve his writ and notices. Nor does his deed have any effect to pass the land itself, like an old feoffment with livery, or necessarily even to give possession of it. He can only attach and afterwards convey the right the debtor has at a certain date.

Real estate attached is not in the custody of the law in the sense attached personal property is.

Under the old law in England, in the cases where it was liable for debts, and also, formerly, in some of our states, the sheriff on execution had actually to seize or take possession of the land. 3 Blackstone Comm. 418. And in many of the states it was,

and in some still is, levied on by an appraisal and delivery of it to the creditor, subject to a right of redemption in the debtor. 5 Dane's Abridg. 19 *seq.*

But under our law no ceremony is required, and none has ever been used in practice, except the notices and returns required by statute. It is of no consequence who claims or occupies the estate. The attachment can only be of the debtor's right and interest in the land at a certain date. It can be of nothing more, for the sheriff is not authorized to sell or convey any more.

It does convey that, whatever it be, even if it be nothing but a right of entry.

The judgment and sale are, so far as title is concerned, merely proceedings to establish the validity of the lien claimed by the attachment and to carry it into effect. The creditor has a right so to proceed, and at law these steps are necessary.

But without meaning to decide such a question, we can see no reason why if, after attachment and judgment, the mortgagee sells, the attaching creditor should not proceed in equity to enforce the lien, inasmuch as, after completing the proceedings at law, he would still be obliged to go into chancery to enforce his claim.

It is true the general principle is, that the equity of redemption can be sold but once. But this must be taken with this qualification, that if it is sold on a second attachment, the purchaser takes it subject to the risk of the first attachment ripening into judgment and sale, which, when done, would take priority by the plain language of the statute, and would render the former sale of no effect.

If the equity of redemption is sold on the first attachment, the subsequent attaching creditors must protect themselves by attending the sale and asserting their claims to the surplus.

The present question is as to a right to a surplus. Now suppose the owner himself had conveyed his equity of redemption by deed before attachment, can there be any question that the purchaser of the equity would be substituted in the place of the vendor, and entitled to the surplus of the mortgage sale as against the vendor?

And the effect of the sheriff's deed to Smith was the same as

if the owner of the equity had himself conveyed the equity by deed of February 21, 1872, which was before the mortgage sale, and before the other attachment or mortgage. It would substitute him to the right to redeem, and if the land was sold on a previous mortgage would substitute him to the right to the surplus.

But it is claimed, on behalf of the holder of the second mortgage, that he is entitled to the whole surplus, inasmuch as although the attachments were previous to the second mortgage, they were made subject to the first mortgage, and having a right to redeem, and not having exercised it, they lost the right they had gained by attachment; and the surplus, which was by the first mortgage reserved to "himself," &c., would pass to his second mortgagee.

For the reasons we have given we cannot take this view.

Another question is presented by the claims of the wife of the mortgagor to a part of the surplus. The husband and wife are both living. The first mortgage on which the sale was made was before marriage. She joined in the second.

The claim of a widow to the surplus is very well settled. But the claim of the wife to have her inchoate right of dower protected does not seem to have been so often before the courts.

In *Denton* v. *Nanny*, 8 Barb. S. C. 618, before the Supreme Court of New York, the wife joined in the mortgage, reserving the surplus on sale to the parties of the first part, &c. The court, in a very long opinion reviewing the cases, held that her contingent right should be secured in the surplus. We believe this case was not appealed. The same doctrine was laid down in *Mills* v. *Van Voorhis*, 23 Barb. S. C. 125, 134, 136, and this point was held the same way in that case before the Court of Appeals. *Mills* v. *Van Voorhis*, 20 N. Y. 412; see also same case in 10 Ab. Pr. 152; *Vartie* v. *Underwood*, 18 Barb. S. C. 561, 564, and *Matthews* v. *Duryee*, 4 Keyes, 525, where the New York Court of Appeals again sustain this doctrine.

In a case in New York growing out of a sale in a suit for partition, Chancellor Walworth held that the wife's inchoate right should be protected by an investment of a part of the proceeds of sale. *Jackson* v. *Edwards*, 7 Paige, 386, 408. On appeal to

the Court of Errors, 24 Wend. 498, this point was not decided, but Senator Verplanck, p. 514, delivered an able opinion concurring with the chancellor. Judge Bronson, p. 513, concurred with the chancellor as to the justice of the case, but considered there was a difficulty in the statute.

There are some cases and *dicta* the other way, but we think that justice and sound reasoning are in favor of protecting the inchoate right.

If it was necessary to sell only a part of the land to pay the debt, she would certainly have retained her right of dower in the remainder, of which she could not have been deprived without her consent. To apply any different doctrine to the surplus would enable the husband to collude with a mortgagee, and deprive her of it without her consent.

Her right can be protected by investing one third of the proceeds of sale in a suitable manner, to await the happening of the contingency, or by calculating the present value of her chance of surviving and paying the sum down.

But as the wife signed the second mortgage, and released her dower, we are of opinion that her right passes to the owner of the second mortgage, and we understand the parties interested agree to this being the result.

> *Decree directing the complainant receiver, an officer of the court, to pay out of the surplus of $796.66 : first, the costs of the bill of interpleader taxed at $87.20 ; second, five per cent. of the remaining $709.46, or $35.47, to one Hughes, the legal representative of F. D. McFarlane, deceased; third, the balance to Henry F. Smith, to be indorsed on the execution held by Smith against Murphy as pro tanto satisfaction.*

*James Tillinghast*, for the complainant.

*George H. Browne, Charles E. Gorman & John F. Lonsdale*, for different respondents.