Judgment reversed and new trial ordered, with costs to abide event.

----

NEW YORK LIFE INSURANCE COMPANY, Plaintiff, *against* FERDINAND MAYER *et al.*, Defendants. CHAUNCEY S. TRUAX, Receiver, Appellant: LINCOLN NAT. BANK *et al.*, Respondents.

(Decided December 5th, 1887.)

As far as real estate is concerned, judgment creditors will acquire liens thereon in the order in which their judgments were docketed; and this priority will not be disturbed or affected by the order in which equity suits are brought to set aside a fraudulent assignment affecting such real estate.

A suit in equity to set aside a fraudulent assignment or conveyance may inure for the benefit of such judgment creditors, by removing an apparent obstacle in the way of the enforcement of their legal rights, but such equity suit, even though resulting in a judgment setting the assignment aside, creates no specific lien upon real estate, as it might upon purely equitable assets or upon personal property.

Judgment creditors will retain their liens, and may enforce the same in the order of the docket, regardless of the fact that junior judgment

creditors have been more diligent in commencing equity suits and in obtaining therein decrees adjudging the assignment void; and a decree simply adjudging the assignment void will be construed to operate in aid of the judgment, and not as a waiver of the legal lien by such judgment secured.

The wife of a mortgagor of land, as against judgment creditors of the mortgagor subsequent to his marriage, is dowable of the surplus moneys received from a sale under execution on a judgment of foreclosure of such mortgage, though she joined in the mortgage, and it contained the clause that the surplus, if any, should be paid to the husband or those claiming under him. Such clause is intended to relieve the mortgagee from the burden of ascertaining to whom the surplus belongs and the responsibility for its proper distribution; and as the wife cannot release her inchoate right of dower to her husband directly, such clause cannot operate against her dower.

APPEAL from an order of this court confirming the report of a referee.

The action was brought to foreclose a mortgage of real property, and a referee was appointed to determine what claims of creditors were liens upon the surplus arising from the foreclosure of the mortgage, and their priority.

The facts are stated in the following opinion rendered at Special Term, April 29th, 1887.

BOOKSTAVER, J. — On September 24th, 1883, Ferdinand Mayer owned individually the equity of redemption in the property sold under foreclosure. At that time he was a member of the firm of F. Mayer & Co., composed of himself and Benjamin Mayer, doing business in the City of New York. On that day he and Benjamin Mayer made a general assignment of all their co-partnership and individual property, including real and personal estate, for the benefit of creditors. The original assignee was removed, and finally Thomas L. James was substituted as assignee, and as such makes claim to these surplus moneys.

In November, 1883, and thereafter, a large number of judgments were recovered, some against Ferdinand Mayer individually, and others against him and Benjamin Mayer,

for firm debts. The plaintiffs in these actions make claims to this surplus, according to their supposed interests in the same. Some of them insist that it should be applied to the satisfaction of money judgments against Mayer and against his firm, in the order of their docketing. Others insist that the application of this surplus should be determined by the order of the commencements of actions in equity based on money judgments, and which have resulted in decrees setting aside as fraudulent and void the assignment made by Mayer and his firm prior to the recovery of the judgments. Holders of individual judgments against Ferdinand Mayer claim that, as the fund arises from his separate property, they should be paid before the judgments of co-partnership creditors.

The first of the money judgments recovered were docketed on November 19th, 1883, by the Lincoln National Bank against Ferdinand Mayer, individually, for the sum of $59,627.33, and by Van Valkenburgh and Leavitt against the firm of F. Mayer & Co. for sums aggregating $54,-771.80, the latter being the second judgment in point of time.

Thereafter four judgment creditors' actions were instituted to have the general assignment before mentioned set aside as fraudulent and a receiver appointed, viz.: *Minzesheimer et al.* v. *Mayer et al.*, begun December 19th, 1883; *Swift et al.* v. *Mayer et al.*, begun February 26th, 1884; *Dexter et al.* v. *Mayer et al.*, begun March 11th, 1884, and *Bank of North America* v. *Mayer et al.*, begun November 20th, 1884. All of these actions were based upon judgments obtained after the judgment of the Lincoln National Bank had been docketed. In each decrees have been entered, declaring the assignment fraudulent and void, and in each Chauncey Traux, Esq., has been appointed receiver and has qualified. The receiver and those whom he represents claim the surplus moneys, on the ground that a lien was acquired on the real estate in question by the judgment creditors' actions, and that the lien so obtained is superior to that of all prior docketed judgments. The Lincoln National Bank claims

that its judgment constituted a legal lien upon the property fraudulently conveyed by Ferdinand Mayer and should first be paid out of the surplus.

In determining this question, it is well to bear in mind the distinction between real and personal property; when and how the lien of a judgment attaches to each; and what is the nature of the lien.

As to the lien, it is not in strictness either *jus in re*, or a *jus ad rem;* that is, it is not a property in the thing itself, nor does it create a right of action for the thing; but constitutes a charge upon the thing.

As between creditors, this charge or lien attaches to personal property at the time an execution on the judgment is issued to the sheriff for service; so that, if the junior judgment creditor issues the first execution, he takes priority, as to personal property, over all senior judgment creditors, and when the sheriff makes an actual levy on the debtor's goods and chattels, the lien becomes complete against all the world, including a subsequent purchaser in good faith. The issuing of the execution to the sheriff fixes the order of priority, as between creditors, as far as personal property is concerned.

Not so as to the real estate of the debtor. In that case the order of priority is determined by the docketing of the judgment, and the lien attaches at the time of the docketing.

These are fundamental principles and fix the liens of judgments and executions with mathematical exactness in all cases where the debtor has not made a fraudulent disposition of his property.

But the receiver claims that the assignment in question was voidable only, and not absolutely void, and that it conveyed such a title to the assignee that no judgment lien did or could attach to the property.

On the argument it was practically conceded that if the assignment was void on its face, the lien of the judgments would have attached, but that, being voidable only by reason of fictitious debts inserted in the schedules, the lien of the judgment could not attach. Is this so? A fraudulent

assignment is on the same footing as any other fraudulent conveyance. The statute of frauds declares a conveyance made to hinder, delay, or defraud creditors, absolutely void as against the creditors defrauded.

Bump on Fraudulent Conveyances (p. 465, 2d ed. p. 474), says: "The theory of the law is, that a fraudulent transfer passes nothing as against creditors. For all purposes of appropriating the property to the satisfaction of their demands, the property is to be deemed still vested in the debtor. The legal, as well as the equitable title, still remains in him, and creditors who obtain judgment against him afterwards acquire liens upon his property wherever such are given by the law, according to the dates of their respective judgments, in the same manner precisely as if no such transfer had been made."

*White's Bank* v. *Farthing* (101 N. Y. 344) holds: "The several judgments became liens on lands fraudulently conveyed by Matilda Farthing, the judgment debtor, in the order of their docketing, and they could have been sold on execution issued on their judgments."

*Underwood* v. *Sutcliffe* (77 N. Y. 62) also holds: "Property of a debtor transferred by him in fraud of creditors still remains as to them the property of the judgment debtor. If real estate, the lien of the judgment against the debtor attaches to it, and if chattels, they can be seized and sold on the execution" (see also *Chautauqua County Bank* v. *Risley*, 19 N. Y. 369; *Walker* v. *White*, 36 Barb. 592; *O'Brien* v. *Browning*, 49 How. Pr. 113; *Erickson* v. *Quinn*, 50 N. Y. 697; 15 Abb. Pr. N. S. 166; *Bergen* v. *Carmen*, 79 N. Y. 146; *Becker* v. *Torrance*, 31 N. Y. 631).

Not only has this doctrine been repeatedly announced in the Court of Appeals, but it is constantly acted on in the case of fraudulent conveyances. A judgment creditor issues his execution to the sheriff, who levies upon and sells both real and personal property, covered by such conveyances. If the assignee or vendee commences an action against him or the sheriff for making such levy and sale, either may defend by attacking the conveyance, and if he

succeeds in establishing its fraudulent character, he is justified in making the levy. This can only be upon the ground that the docketing of the judgment gave him a lien upon the real estate, and the levy of the execution a lien upon the personal property. The fact that the conveyance may be ratified and the fraud waived by one or more creditors does not, I think, affect its invalidity as against the creditor who attacks the conveyance and shows the fraud. And if he establishes its invalidity, either at law or by proceedings in equity, brought for that purpose only, his legal position is the same and the lien of his judgment the same as though the conveyance had not been made. I therefore conclude that the Lincoln National Bank had a lien upon the real estate covered by the mortgage, and has upon the surplus arising from the foreclosure of the same, notwithstanding the assignment, unless it has done something to waive that lien, or omitted to do something which renders the lien passive.

The receiver claims that the bank has waived its lien by commencing an action in equity to set aside the fraudulent assignment. This action was commenced after those in which the receiver was appointed, and not only prayed that the assignment might be declared fraudulent and void, as to it, but also, like them, that a receiver should be appointed and the property fraudulently conveyed sold. Had this prayer been granted, and a decree entered, appointing a receiver and sequestrating the property, there can be no doubt, under numerous decisions, that the bank would not only have waived its legal lien, but also that the lien acquired by it under such a decree would have been subordinate to the receiver's. But does the mere fact of asking such relief waive the legal lien if not followed by a decree? The plaintiff in an action cannot obtain greater relief than he asks for, but he may at any time take less than all he has asked for, provided he has asked for what he takes. In actions of this kind, I apprehend it is what he finally takes that concludes him.

In *Erickson* v. *Quinn* (50 N. Y. 697, 699; also 15 Abb. Pr. N. S. 166) the plaintiffs, as judgment creditors of one

O'Malley, brought a creditors' suit and alleged a fraudulent conveyance of certain lands by the judgment debtor to the defendant, and asked for the appointment of a receiver and a sale of the property. After a first trial of the action, and pending an appeal, plaintiffs issued an execution upon their judgment against O'Malley and advertised the property for sale, but did not sell until the judgment in the creditors' action was reversed, when the property was sold and bought in by plaintiffs. The action was thereafter treated as one to remove obstructions to their judgment, and in this they prevailed. The defendant afterwards moved to set the judgment aside, upon the ground that, during the pendency of the action, plaintiffs had sold the property in controversy and had become the purchasers at sheriff's sale, bidding the full amount of their judgment and thus satisfying it. The court held. that whether plaintiffs had in fact obtained satisfaction depended upon the validity of the title acquired under sheriff's deed, and that the judgment in the creditors' action was necessary to establish that title; that by it the obstacle to their recovery and the cloud upon their title was removed; that both proceedings were harmonized, both necessary to give the plaintiffs the relief sought (see also *Chautauqua County Bank* v. *Risley*, 19 N. Y. 369; *Wakeman* v. *Grover*, 4 Paige 23; *Haswell* v. *Links*, 87 N. Y. 638; *Anderson* v. *Roberts*, 19 Johns. at p. 532; *Beck* v. *Burdett*, 1 Paige 305).

In the case of *White's Bank* v. *Farthing* (101 N. Y. 344), the Court of Appeals, after referring to the right of the judgment creditor to sell on execution land which had been fraudulently conveyed, says: "The plaintiff, however, elected to bring its action to remove the alleged fraudulent obstruction created by the conveyances. If it succeeds in establishing the fraud, it will be entitled to a judgment setting aside the conveyances, simply, in which case it can proceed to enforce its judgment by a sale of the land on execution unembarrassed by the cloud created, or the court may proceed further and compel the fraudulent grantees to convey the lands to a receiver to be sold to satisfy the plain-

tiff's judgment. If it simply sets aside the fraudulent con-
veyances, the land will remain charged with the liens of the
several judgments in the order of their docketing, and the
proceedings to enforce them will be regulated by statute."

In the case of the Lincoln National Bank the decree
entered simply declared the assignment fraudulent and void,
as against the plaintiff and its judgment, and "that said
judgment is a lien on the said real estate of said Ferdinand
Mayer and Benjamin Mayer, which they owned at the time
of the making and the delivery of the said assignment, the
same as if said assignment had not been made." It did not
appoint a receiver nor sequester the property, but left the
bank to pursue its legal remedies untrammelled by the assign-
ment. In other words, the equitable action was brought in
aid of the legal remedy, and I do not think it can be success-
fully contended that a suit in aid of a legal remedy waives
the latter. In such case, as was said in *McElwain* v. *Willis*
(9 Wend. at p. 567), "The aid of chancery is not sought,
strictly speaking, for a new process, or to enlarge the func-
tions of the legal process, but to remove some extraneous im-
pediments by which its functions are crippled or deranged."

Actions in aid of a legal remedy are broadly distinguished
from those in which the creditor seeks the creation of a trust
fund, out of which his claim may be satisfied, or seeks to
satisfy it out of things in action or other equitable assets,
which cannot be reached at law; in the latter, it is well
settled by numerous authorities that the creditor waives his
legal remedies, and his lien attaches as of the time of com-
mencing his suit in equity; but in the former he does not
waive his lien — that remains as fixed by law.

I therefore conclude that the bank, by docketing its judg-
ment, acquired a lien on the real estate in question, which
has not been waived nor lost by anything it has done subse-
quently.

The relative position of the claimants is not changed by
the fact that the real estate has been sold under foreclosure.
The surplus moneys are to be regarded as land, and are to
be distributed among those who had liens on the land sub-

ject to the mortgage, according to their priorities. Their liens are transferred from the land to the surplus (*Averill* v. *Loucks*, 6 Barb. 470; *Purdy* v. *Doyle*, 1 Paige 558; *De La Vergne* v. *Evertson*, 1 Paige 187).

So far I have treated the referee's report as though it related to the surplus arising from the sale under foreclosure in the action, in this court, of the *New York Life Ins. Co.* v. *Ferdinand Mayer*, only. But the same referee was appointed in similar proceedings in four other foreclosure actions in the Supreme Court, for a like purpose, and his report covers these cases as well. The surplus in these actions also arose from the sale of real estate, the property of Ferdinand Mayer individually, and the aggregate of this surplus, including that in the action of the New York Life Ins. Co., in this court, is $89,882.27, while the amount due on the Lincoln Bank judgment is $51,538.28 only, so that, after satisfying that judgment in full, there will be left about $38,000 to be distributed among other creditors.

On behalf of Gillis & Geoghegan and other judgment creditors of the individual members of the firm of Ferdinand Mayer & Co., it is claimed that the remainder should be distributed among them in preference to the judgment creditors of the firm, and they rely on the well-settled rule in equity that, as between the joint and separate creditors of partners, the partnership property is to be first applied to the payment of co-partnership debts, and the separate property of the individual partners to the payment of their separate debts; and that neither class of creditors can claim anything from the fund which belongs primarily to the opposite class until all the claims of the latter are satisfied.

But this is not an action to marshal the assets of the insolvent estate, nor to determine the claims and priorities as between the separate creditors and co-partnership creditors; or as between them and creditors like Swift & Co., who, by the commencement of equitable actions, have made an equitable levy, and who have acquired a specific lien on the assigned estate. The proceeding is brought under Rule 64 of Rules of General Practice; and in such a proceeding the

referee is "to ascertain and report the amount due" the applicant for surplus moneys, "or to any other person, which is a lien upon such surplus moneys, and to ascertain the priorities of the several liens thereon."

If the surplus is charged with legal liens, equity will not interfere with the rules of law regulating its application.

The judgments of Van Valkenburgh & Leavitt were docketed on the 19th of November, 1883, long before any money judgments were obtained by the individual creditors of the members of the firm, and long before any proceedings in equity were taken by such creditors to enforce their claims. They have taken precisely the same course as that pursued by the Lincoln Bank, and under *Averill* v. *Loucks* (6 Barb. 478), *Meech* v. *Allen* (17 N. Y. 300), their judgments for co-partnership debts became a lien upon the separate real estate of the partners from the time of the docketing, with the same effect as if such judgments were for the individual debts of the partners.

In the case last cited, the court, after stating the rule contended for by the individual creditors in this matter, says : "This, however, is a rule which prevails in courts of equity in the distribution of equitable assets only. Those courts have never assumed to exercise the power of setting aside, or in any way interfering with, an absolute right of priority obtained at law. In regard to all such cases the rule is, *Equitas sequitur legem* (1 Story Eq. Jur. § 553)." And the opinion concludes that "there is no doubt that at law the judgment for a partnership debt attaches and becomes a lien upon the real estate of each of the partners, with the same effect as if such judgment were the separate debt of said partner."

As the judgments of the Lincoln National Bank and Van Valkenburgh and Leavitt will much more than exhaust the whole surplus, it is unnecessary now to examine any of the other questions raised upon the appeal, except the claim of Levy Bros. & Co., and of Regina Mayer.

As to the first of these claims, I think the referee has properly disallowed it, for the reasons stated in his opinion.

The claim of Regina Mayer, wife of Ferdinand Mayer, is for the value of her inchoate right of dower in the surplus arising from the sale under the several mortgages, and this has been allowed by the referee.

The question raised is not free from doubt. On the part of the creditors, it is claimed that, as a consequence of the original making and delivery of the mortgage by her, in which it was provided that the overplus of the purchase money, if any there should be, should be rendered to her husband, his heirs, or assigns, and the sale having taken place according to the terms of the mortgage, the surplus became personal property, and should be paid to him or to those who claim in his right, and this view seems to be supported by *Titus* v. *Neilson* (5 Johns. Ch. 453) ; *Bell* v. *Mayor, etc.* (10 Paige 55) ; *Frost* v. *Peacock* (4 Edw. Ch. 678) ; *Sickman* v. *Harsen* (98 N. Y. 186) ; *Moore* v. *Mayor, etc.* (7 N. Y. 110). On behalf of the wife, it is claimed that inchoate right of dower attaches to the surplus, which *pro hac vice* is still to be deemed real estate, and entitles her to claim her interest therein, under the rule laid down in *Jackson* v. *Edwards* (7 Paige 408) ; and this contention seems to be supported by *Denton* v. *Naum* (8 Barb. 618) ; *Mills* v. *Van Voorhis* (20 N. Y. 412) ; *Simar* v. *Canady* (53 N. Y. 298) ; *Douglass* v. *Douglass* (11 Hun 406) ; *Matthews* v. *Duryea* (4 Keyes 525).

In the latter case, brought to recover dower in the surplus funds arising from sales under decrees of foreclosure, the husband of plaintiff had made a general assignment to the defendant, Duryea, in trust for the benefit of creditors, in which plaintiff did not join. The court was of the opinion " That the plaintiff is endowable of the surplus which remained after the payment of the mortgages which had been foreclosed, is too well settled to be questioned " (*Hawley* v. *Bradford*, 9 Paige 200 ; *Vartie* v. *Underwood*, 18 Barb. 561) ; nor will her right be affected, whether the sales upon the foreclosure suits took place before or after the death of her husband, for it has been decided in the court that the inchoate right of dower of the wife is as much entitled to pro-

tection as the perfected or vested rights of the widow (*Mills v. Van Voorhis*, 20 N. Y. 412).

The claim of the wife, I think, is supported by the greater weight of authority, although I find myself much embarrassed by the provision in the mortgage, that the overplus should be paid to the husband, or those claiming under him. It is clear that, in such a case, if creditors do not intervene, and the surplus is paid to the husband, it becomes personal property in his hands, and she can have no dower in it; but it is claimed that it was not paid to him, and that, as between her and the general creditors of her husband, there was no privity of contract, and that the mortgage was only executed by her as a protection for the particular debt secured thereby, and that, this object having been accomplished, her interest in the surplus remains the same as if the mortgage had not been executed.

I am also in great doubt whether such a claim can be entertained in proceedings of this nature as, I think, in such proceedings, only such claims can be enforced as are vested interests in the lands or liens upon it which have been cut off by foreclosure (*Dunning* v. *Ocean Bank*, 61 N. Y. 503; *Mut. Life Ins. Co.* v. *Fruchnicht*, 3 Abb. N. Cas. 135; *Matthews* v. *Duryea*, 45 Barb. 69; *German Sav. Bank* v. *Sherea*, 25 Hun 409; *Fliess* v. *Buckley*, 22 Hun 554; 24 Hun 515; 90 N. Y. 291). But as the parties who, if my opinion is correct, are to receive this surplus, have apparently acquiesced in this part of the report, and as the error of the referee, if he has made any, in regard to this question, can easily be corrected on appeal after mature deliberation, I will confirm his report in this respect also.

From the order of the special term confirming the report of the referee rendered on the foregoing opinion, the receiver appealed.

*Henry A. Root,* for appellant.

*Simpson Werner,* for respondents.

LARREMORE, Ch. J. — After reading the opinion of the learned judge who confirmed the report in this proceeding at Special Term, and the opinion of the learned referee therein, it would be an act of supererogation on my part to further discuss the main questions involved. I could only go over the same ground which they have covered, without showing any more clearly than they have done that the results arrived at are correct. I have only therefore to announce my concurrence in the conclusions:

1. That, as far as real estate is concerned, judgment creditors will acquire liens thereon in the order in which their judgments were docketed, and that this priority will not be disturbed or affected by the order in which equity suits are brought to set aside a fraudulent assignment affecting such real estate.

2. That suits in equity to set aside a fraudulent assignment or conveyance may inure for the benefit of such judgment creditors by removing an apparent obstacle in the way of the enforcement of their legal rights, but that such an equity suit, even though resulting in a judgment setting the assignment aside, creates no specific lien upon real estate, as it might upon purely equitable assets or upon personal property.

That judgment creditors will retain their liens, and may enforce the same in the order of the docket, regardless of the fact that junior judgment creditors have been more diligent in commencing equity suits and in obtaining therein decrees adjudging the assignment void; and that a decree simply adjudging the assignment void will be construed to operate in aid of the judgment and not as a waiver of the legal lien by such judgment secured.

The only question upon which the judge at Special Term expressed any doubt was that concerning the dower of Regina Mayer, the mortgagor's wife. This matter he apparently sent to the General Term for final decision, confirming however the report upon that point as upon all others. In this we think he did not err. The learned referee cites many cases to the effect that the wife of a

mortgagor is endowable of the surplus moneys, even though she has joined in the mortgage, and we agree with the judge at Special Term that the claim of the wife is supported by the weight of authority. Dower is justly one of the estates most favored by the law, and the tendency of adjudication has always been to preserve it for the wife, if this may be done on any tenable theory. A case in the State of Delaware (*Ingram* v. *Morris*, 4 Harrington 111), affords perhaps an extreme instance of this disposition on the part of the courts. The law undoubtedly is that a judgment against a husband recovered after marriage will be a lien, not superior but subordinate to the wife's inchoate right of dower. But in that case the judgment was entered on the same day as the marriage, and it was held that the dower was a prior lien to the judgment, it not actually appearing which in fact occurred first, the marriage or the docketing of the judgment.

The surplus moneys, according to fiction of law, continue land and subject to its incidents after the sale, and we think there is every reason why dower should attach thereto in the same manner that judgments do. Nor do we find any serious embarrassment in the fact that the clause in the mortgage in which the wife joined, stipulated that the surplus, if any, should be paid to the husband or those claiming under him. The wife might have agreed that such surplus be paid to her husband without agreeing that he become the absolute owner of the whole of it. The effect of the clause is, and was intended to be, to relieve the mortgagee from the burden of ascertaining to whom the surplus belongs and the responsibility for its proper distribution. As a matter of fact, the law of this state steps in and exonerates all persons from this responsibility, by making the distribution under fixed rules of practice.

The contention that the clause in question operates to vest the surplus moneys in the husband as his sole property cannot prevail, because it would in effect nullify a well-known principle of law for the wife's benefit. A wife may not convey or release her inchoate right of dower to her

husband directly, though she may by joining with him in a conveyance release it to his grantee. If in a case where the husband had no judgment creditors, the surplus moneys became his sole property through the clause in question in the mortgage, it would be in effect releasing the wife's inchoate right of dower directly to her husband, by the combined efficacy of an instrument in writing and a foreclosure suit. Furthermore, where there are creditors, it would be enabling those whose judgments were docketed after the marriage to entirely over-ride the wife's right of dower, thus reversing a well-settled rule in this respect above referred to. If one will keep in mind, that, in contemplation of law, the surplus moneys are still real estate, any argument against the wife's right may be effectually answered.

Nor do we share in the doubt of the learned judge as to whether or not such a claim can be entertained in surplus proceedings. He was of opinion " that only such claims can be enforced as are vested interests in the land or liens upon it which have been cut off by foreclosure." In one sense dower is a vested interest in the land. It is subject to being divested by death or divorce, but the interest is ascertained, and the exact person to take the interest upon the happening of a certain event (the husband's death) is also ascertained, and it is therefore not an abuse of legal terminology to speak of it as a vested interest.

Still, aside from this consideration, a wife's right of dower is not an interest with which the courts are disposed to be technical. The powers of referees in surplus proceedings during recent years have been greatly enlarged by adjudications in the Court of Appeals, and the tendency seems to be to have all questions affecting the ownership of or rights in the surplus moneys finally determined on the merits in the surplus proceedings. Unless the wife's claim can be considered and allowed here, it will be quite effectually barred forever; that is, if the other alternative the learned judge had in mind was to pay all the money over to the judgment creditors. We think there can be no doubt as to

the wife's right to be endowed of this surplus, and to hold that her claim may not be asserted in this proceeding would be to concede that she has a legal right, yet deny her any effective remedy to enforce it.

The order confirming the referee's report must be affirmed.

J. F. DALY and VAN HOESEN, JJ., concurred.

Order affirmed.